**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

SEOUL SEMICONDUCTOR CO., LTD.,
a Korean corporation,

    **and**

SEOUL VIOSYS CO., LTD.,
a Korean corporation,

        **Plaintiffs,**

    **v.**

ACE HARDWARE CORPORATION,

      **Defendant.**

                                        **Civil Action No. 3:22cv271**

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on Defendant Ace Hardware Corporation's ("Ace Hardware") Motion to Dismiss or, Alternatively, to Transfer Venue (the "Motion"). (ECF No. 13.) Plaintiffs Seoul Semiconductor Co., Ltd. ("Seoul Semiconductor") and Seoul Viosys Co., Ltd. ("Seoul Viosys," and collectively with Seoul Semiconductor, "Seoul") responded, and Ace Hardware replied. (ECF Nos. 19, 30.) This matter is ripe for adjudication.

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.[1] For the reasons that follow, the Court will grant the Motion to Transfer. Because the Court will grant the Motion to Transfer, it will

---

[1] Section 1331 of Title 28 of the United States Code provides:

    The district courts shall have original jurisdiction over all civil actions arising under
    the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1331.

not rule on the Motion to Dismiss, and instead defer the Motion to Dismiss to the transferee court.

## I. Procedural and Factual Background

### A.    Procedural Background

Seoul filed a ten-count Complaint in the Eastern District Court of Virginia, alleging that Ace Hardware infringes upon ten of Seoul's patents by "import[ing] into the United States . . . certain LED products that infringe . . . Seoul['s] . . . patents. . . [and] then sell[ing] these infringing products to consumers located in the Eastern District of Virginia and other areas of the United States." (ECF No. 1 ¶ 8.) Specifically, Seoul brings the following counts:

**Count I:**      Infringement of United States Patent No. 7,572,653, ("the '653 patent")

**Count II:**     Infringement of United States Patent No. 7,667,225 ("the '225 patent")

**Count III:**    Infringement of United States Patent No. 9,269,868 ("the '868 patent")

**Count IV:**     Infringement of United States Patent No. 8,604,496 ("the '496 patent")

**Count V:**      Infringement of United States Patent No. 8,659,050 ("the '050 patent")

**Count VI:**     Infringement of United States Patent No. 9,147,821 ("the '821 patent")

**Count VII:**    Infringement of United States Patent No. 8,981,410 ("the '410 patent")

**Count VIII:**   Infringement of United States Patent No. 9,716,210 ("the '210 patent")

**Count IX:**     Infringement of United States Patent No. 10,134,967 ("the '967 patent")

**Count X:**      Infringement of United States Patent No. 7,397,069 ("the '069 patent")

(ECF No. 1, at 11–30.)

Ace Hardware filed its Motion to Dismiss or, Alternatively, to Transfer Venue. (ECF No. 13.) In the Motion, Ace Hardware "moves th[e] Court to dismiss [this action pursuant to] Federal Rule [of Civil Procedure] 12(b)(3) for improper venue or, alternatively, to transfer this

2

case to the Northern District of Illinois." (ECF No. 13, at 1.) Seoul filed its Opposition, and Ace Hardware filed its Reply. (ECF Nos. 19, 30.)

## B. Factual Background[2]

### 1. General Background

Seoul Semiconductor is one of the largest manufacturers of light emitting diodes ("LEDs") in the world, and Seoul Viosys, its subsidiary, is also a leading company in the LED industry. (ECF No. 1 ¶ 2.) Ace Hardware "imports into the United States[,] through the Port of Norfolk and elsewhere[,] certain LED products that infringe . . . Seoul['s] . . . patents . . . [and] then sells these infringing products to consumers located in the Eastern District of Virginia and other areas of the United States." (ECF No. 1 ¶ 8.)

Between April 2019 and September 2021, Seoul sent Ace Hardware twelve notice-of-infringement letters asking Ace Hardware to stop selling products that infringe Seoul's patents. (ECF No. 1 ¶¶ 25–36.) Seoul does not indicate to which address it sent these letters or to whom the letters were addressed. Ace Hardware's counsel responded to only one of these letters—a March 10, 2021 letter—"but made no commitment to investigate the patents or accused products, did not mention any analysis of infringement or validity, and made no agreement to stop selling infringing products." (ECF No. 1 ¶ 32.)

In October 2021, Seoul filed a patent infringement case against Ace Hardware in the Western District of Texas. *See Seoul Semiconductor Co. v. Ace Hardware Corp.*, 6:21cv01060, (W.D. Tex. filed Oct. 21, 2021); (ECF No. 43-1). Seoul asserted infringement of sixteen patents

---

[2] Because the Court will grant Ace Hardware's Motion to Transfer, the Court will give only a brief overview of the facts pertaining to the underlying dispute prior to discussing the facts relevant to the Motion to Transfer.

from at least two manufacturers. *See id.* at Dkt. 8 ¶¶ 8–15, 20–35; (ECF No. 43-1 ¶¶ 8–15, 20–35.) In the Texas case, Ace Hardware moved to dismiss or, in the alternative, to transfer venue to the Northern District of Illinois. (ECF. No. 30-1, at 2–22.) Seoul voluntarily dismissed the Texas case on April 15, 2022. *See Seoul Semiconductor Co. v. Ace Hardware Corp.*, 6:21cv01060, Dkt. 9 (W.D. Tex. filed Oct. 21, 2021); (ECF No. 43-3.) The same day the Texas action was dismissed, Seoul filed its Complaint in this Court.

### 2. Factual Background Relating to the Motion to Transfer

#### a. Seoul's Operations

Seoul Semiconductor is a company organized and existing under the laws of the Republic of Korea, with its principal place of business in Korea. (ECF No. 1 ¶ 4.) Seoul Viosys is a subsidiary of Seoul Semiconductor and is a company organized and existing under the laws of the Republic of Korea, with its principal place of business in Korea. (ECF No. 1 ¶ 5.) Seoul's "success is in large part due to their significant investment in innovation and respect for intellectual property." (ECF No. 1 ¶ 3.) Seoul Semiconductor "owns one of the largest LED patent portfolios in the world, which includes more than 10,000 patents worldwide." (ECF No. 1 ¶ 3.) Seoul Semiconductor's United States sales offices are located in Michigan, Georgia, and California. (ECF No. 14, at 13.)

#### b. Ace Hardware's Operations

Ace Hardware is a Delaware corporation, with its principal place of Business in Oak Brook, Illinois. (ECF No. 1 ¶ 6.) It has "physical locations in this Judicial District and Division, including a Redistribution Center [the 'RDC'] located at 1006 Center[p]oint Drive in Suffolk, Virginia." (ECF No. 1 ¶ 7.) The Suffolk RDC is a 475,000 square foot warehouse, and "serves as [Ace Hardware's] east coast hub for receiving import merchandise through the Port of

Virginia." (ECF No. 1 ¶ 7.) The Suffolk RDC "distributes products 'to [ten] of Ace Hardware's [fourteen] Retail Support Centers, serving Ace [Hardware] retail stores as far as Texas, New York[,] and Florida.'" (ECF No. 1 ¶ 7.) Seoul states that "[b]etween September 1, 2015[,] and April 8, 2022, Ace Hardware received at least 4,953 shipments through the Port of Norfolk, of which at least 209 shipments were identified by the shippers as containing LEDS, lamps, and/or lighting (or a combination of these)." (ECF No. 1 ¶ 12(a).)

"Four Ace Hardware employees work at [the Suffolk RDC], in addition to dozens of employees of Ace Hardware's contractor, Expeditors International [of Washington, Inc. ('Expeditors')]." (ECF No. 19, at 9.) Expeditors, a global logistics and warehouse managing company, "conducts much of the distribution operations at the Suffolk [RDC]." (ECF No. 19, at 23.)

In his sworn declaration, Kevin Kryscio, the Corporate Vice President of Supply Chain and Logistics at Ace Hardware, states that "Ace Hardware maintains its physical and electronically stored records as they relate to sales, marketing, manufacturing, product development, and research at its principal place of business." (ECF No. 15-3 ¶ 4.) He avers that "[n]o Ace Hardware employee at the Suffolk facility is involved in the selection, ordering, sales, or returns of the accused products." (ECF No. 15-3 ¶ 6.) He states that "[a]ll pertinent information relating to the products at issue, including sales, finance, [and] marketing [is] located at Ace Hardware's Illinois headquarters," and that any other "documents and . . . information that may be relevant to this suit are also likely located in Illinois." (ECF No. 15-3 ¶¶ 6, 9.)

In his sworn declaration, Matthew Massey, the RDC Import Manager at Ace Hardware, states that "[he] and the other three Ace Hardware employees in Suffolk[] are not involved in the selection, ordering, sales, or returns of the products that are received [in Suffolk]. Rather, [they]

focus only on intake of shipments designated for delivery [in Suffolk] by headquarters [in Illinois] and the corresponding redistribution of product[s] to a Retail Support Center." (ECF No. 15-2 ¶ 8.) Massey states that "based on [his] recollection and review of available records, which are a subset of those available at [Ace Hardware's] Illinois headquarters, not one of the products identified in [Seoul's C]omplaint has passed through the Suffolk RDC." (ECF No. 15-2 ¶ 5.) He further avers that "the distribution operations at the location named in [the C]omplaint are conducted by Expeditors." (ECF No. 15-2 ¶ 9.)

## II. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision to transfer a case rests in the district court's sound discretion. *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). "The movant carries the burden of establishing the propriety of the transfer request." *Bascom Res., LLC v. Facebook, Inc.*, No. 1:12cv1111, 2012 WL 12918407, at *1 (E.D. Va. Dec. 11, 2012).

A court determining the propriety of a motion to transfer under § 1404(a) follows a two-step inquiry. *Koh*, 250 F. Supp. 2d at 630. First, the court determines whether the claims could have been brought in the transferee forum. *Id.* To do so, "a movant must establish that both venue and jurisdiction with respect to each defendant is proper in the transferee district." *Id.* at 631 (citations omitted). Second, a court considers the following seven factors:

> (1) ease of access to sources of proof; (2) the convenience to the parties and witnesses; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and, (7) the interest of justice.

6

*Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005). A court's decision to transfer depends on the particular facts of the case because § 1404(a) "provides no guidance as to the weight" that courts should afford each factor. *Id.* at 716 (citing 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3847 at 370). However, "[t]he principal factors to consider" are: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice. *Id.*; *See also Bascom*, 2012 WL 12918407, at *1. "The party asserting . . .inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details . . . to enable the court to assess the materiality of evidence and the degree of inconvenience." *Koh*, 250 F. Supp. 2d at 636 (citation omitted).

"Although a plaintiff's choice of forum 'is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action,' deference to that forum choice 'varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action.'" *Bascom*, 2012 WL 12918407, at *1 (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)). "[I]f there is little connection between the claims and t[he] judicial district, that would militate against a plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts." *Koh*, 250 F. Supp. 2d at 635 (citation omitted).

In a patent case, "[a]s a general rule, the preferred forum is that which is the center of the accused activity." *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) (alteration in original) (citation omitted). "The center of accused activity will most often be where the offending device is produced." *Id.* "[T]he trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Id* (alteration in original) (citation omitted and emphasis removed). "[T]he nucleus of operative

7

facts [in a patent case] forms at or near the 'center of the allegedly infringing activities,'
primarily where the accused products were designed, developed, and manufactured." *Macronix
Int'l Co. v. Spansion Inc.*, No. 3:13cv679, 2014 WL 934521, at *2 (E.D. Va. March 10, 2014)
(citing *Koh*, 250 F. Supp. 2d at 636). However, "[t]he availability of modern technology . . . has
alleviated the substantiality of this doctrine to the extent that transportation of evidence in patent
suits is no longer as expensive and time consuming as it once was." *Cobalt Boats, LLC v. Sea
Ray Boats, Inc.*, Case No. 2:15cv21, 2015 WL 1800274, at *3 (E.D. Va. Apr. 16, 2015)
(citation omitted).

## III. Analysis

The decision regarding transfer of this case rests largely on one issue: whether Ace
Hardware's RDC in Suffolk supports a finding that this matter should stay in this Court. It
does not.

The Court will grant Ace Hardware's Motion to Transfer and transfer this case to the
Northern District of Illinois because Seoul could have brought this action in the Northern District
of Illinois and the four factors that this Court must consider in deciding this Motion strongly
favor transfer. Given the forthcoming transfer, the Court will not address whether it should
dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(3).

### A. Seoul Could Have Brought Its Claims Against Ace Hardware in the Northern District of Illinois

As to the first of the Court's two-part inquiry, the Court concludes that Seoul could have
initiated this action in the Northern District of Illinois. "[A] district court may transfer any civil
action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

To demonstrate that an action could have been brought in the proposed transferee forum,
the movant must establish that both venue and jurisdiction are proper for each defendant. *Koh*,

8

250 F. Supp. 2d at 630. Pursuant to 28 U.S.C. § 1400(b), a civil action for patent infringement may be brought in any district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1514 (2017).

No question exists that venue and jurisdiction are proper for Ace Hardware in the Northern District of Illinois because its principal place of business is in Oak Brook, Illinois, which is within the Northern District of Illinois. (ECF No. 15-3 ¶ 3.) Because Ace Hardware "resides" in the Northern District of Illinois, Seoul's claims against Ace Hardware might have been brought in the transferee forum. *TC Heartland*, 137 S. Ct. at 1514.

Therefore, because venue and jurisdiction are proper in the transferee district, the first step of the Court's two-step inquiry allows transfer of this matter to the Northern District of Illinois.

**B.      All Four Principal Factors Weigh in Favor of Transfer**

The Court turns to the second part of the two-part inquiry which requires the evaluation of four subparts within it. Seoul's choice of forum, the convenience to the parties, and the convenience to the witnesses support transfer of this action to the Northern District of Illinois. The fourth factor, the interest of justice, weighs slightly in favor of transfer. As such, the second step of the two-part inquiry supports a finding that the Court may transfer this matter to the Northern District of Illinois. The Court will exercise its discretion to do so.

**1.      The Court Will Afford Little Weight to Seoul's Choice of Forum**

The first "principal factor" to consider is Seoul's choice of forum. *Samsung Elecs.* 386 F. Supp. 2d at 715. Here, Seoul's choice of forum is not entitled to substantial weight because the Eastern District of Virginia is not Seoul's home forum, the center of the accused activity is not in

9

the District, and the only nexus tying the Eastern District of Virginia to the underlying patent infringement allegations is that the accused products *may* be imported into and distributed from the Suffolk RDC.

While the "plaintiff's choice of forum is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action[,] . . . [t]he level of deference to a plaintiff's forum choice varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." *Pragmatus,* 769 F. Supp. 2d at 995. "Even when the plaintiff sues in its home forum, that fact is not by itself controlling and the weight of that factor depends on the nexus tying the case to the forum." *Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, No. 1:08cv1246, 2009 WL 874513, at *2 (E.D. Va. March 27, 2009). Accordingly, analysis of whether a plaintiff's choice of forum should receive substantial weight is heavily fact-based and dependent upon the specific facts and circumstances of each case. *See ThroughPuter Inc. v. Microsoft Corp.*, No. 3:21cv216, 2022 WL 874319, at *7 (E.D. Va. Mar. 23, 2022).

Plainly, Seoul cannot establish that the Eastern District of Virginia is its home forum. *See Pragmatus,* 769 F. Supp. 2d at 995. Plaintiffs are Korean corporations headquartered abroad, (ECF No. 1 ¶¶ 4–5), and they have not indicated that they have any known offices or meaningful ties to this District.[3]

---

[3] Ace Hardware states that Seoul Semiconductor's United States sales offices are located in Michigan, Georgia, and California. (ECF No. 14, at 14.)

Second, the Eastern District of Virginia is not the "center of the accused activity."[4]

*Acterna,* 129 F. Supp. 2d at 939. In a patent action, "the preferred forum is that which is the

center of is the center of the accused activity." *Id.* (citation omitted). This is "primarily where

the accused products were designed, developed, and manufactured." *Macronix Int'l,* 2014 WL

934521, at *2 (citing *Koh,* 250 F. Supp. 2d at 636). Here, Seoul does not contend that the

accused products were "designed, developed, and manufactured" in the Eastern District of

Virginia. *Id.*

Third, Seoul unconvincingly contends that this forum "bears a substantial relation to the

cause of action" because Ace Hardware's Suffolk RDC is "the east coast hub for receiving

---

[4] In its Opposition, Seoul contends that,

> There are more than [thirty] Ace Hardware retail stores located in the Eastern District of Virginia, including at least a dozen Ace Hardware stores in the Richmond Division. Ultimately, then, the allegations and factual admissions of Ace Hardware plausibly establish that Ace Hardware contracts with its retail stores situated throughout the Eastern District of Virginia to sell (or, at minimum, offer to sell) the accused LED lighting products.

(ECF No. 19 at 16.) To the extent Seoul seeks to argue that venue is appropriate given that Ace Hardware has retail locations in this District, its legal theory cannot be supported based on facts elicited in the Texas litigation about how Ace Hardware operates.



(ECF No. 30-1, at 7–9.) Seoul voluntarily dismissed its action in Texas following venue discovery on this legal theory. *See Seoul Semiconductor Co. v. Ace Hardware Corp.,* 6:21cv01060, Dkt. 9 (W.D. Tex. Oct. 21, 2021); (ECF No. 43-3). The reprisal of a failed legal theory here is, at best, a poor use of judicial resources.

import merchandise[,] serves [ten] out of Ace Hardware's [fourteen] retail support centers[,] and plays a vital role in distributing products to Ace [Hardware] retail stores as far as Texas, New York, and Florida." (ECF No. 19, at 18–19.) It further avers that Ace Hardware received at least 4,953 shipments through the Port of Norfolk, of which at least 209 shipments were identified by the shippers as containing LEDs, lamps, and/or lighting. (ECF No. 1 ¶ 12(a).)

While sales or importation can create contacts to the choice forum, the fact that importation of an infringing product occurs in a particular district does not necessitate a finding that the plaintiff's choice of that district is entitled to substantial weight. *See NanoEntek, Inc. v. Bio–Rad Labs., Inc.*, No. 2:11cv427, 2011 WL 6023189, at *3 (E.D. Va. Dec. 2, 2011). Indeed, as *NanoEntek* articulated, "[m]ere sales and marketing activit[ies] do[] not entitle [a plaintiff's] choice of forum to substantial weight when none of the infringing products were developed or produced in this District." *Id.* (citation omitted).

The Court follows the same logic here. The fact that the infringing products may find themselves in this District (either for sale or for further distribution elsewhere) does not lend much weight to Seoul's choice of forum. *See id.* This is especially true here, where Seoul can at most assert that "at least 209 shipments were identified by the shippers as containing LEDs, lamps, and/or lighting," but cannot plainly state that the accused products are imported into the forum. (ECF No. 19, at 14.) Seoul "identifies three . . . products that it *believes* pass through the Suffolk[ RDC]." (ECF No. 19, at 9 (emphasis added).) But RDC Import Manager Matthew Massey declares that "[b]ased on [his] recollection and review of available records, which are a subset of those available at [Ace Hardware's] Illinois headquarters, not one of the products identified in [Seoul's] complaint has passed through the Suffolk RDC." (ECF No. 15-2, at 2.)

Seoul counters with a sworn declaration from Christopher Suarez attaching a record of "the importation by Ace Hardware of LED products" that includes products that infringe the patents-in-suit. (ECF No. 20 ¶ 6; ECF No. 20-5; ECF No. 19, at 15.) However, Seoul does not contextualize the importation record, so it has little persuasive value. Even if this Court were to consider the importation record, the document does not appear to list any of the accused products identified in Seoul's Complaint, but rather appears to list irrelevant Westinghouse products.[5] (ECF No. 20-5.) While Import Manager Massey's declaration, which stems from "recollection" and a "review of available records," may lack specificity, it is a statement proffered by a person with knowledge of the subject matter, and it is under oath. Clearly the persuasive value of Mr. Massey's declaration outweighs that of any document appended for Seoul's opposition.

As a result, Seoul's choice of forum is not entitled to substantial weight because the Eastern District of Virginia is not Seoul's home forum, the center of the accused activity is not in this District, and the only nexus tying the Eastern District of Virginia to the underlying patent infringement allegations is that the accused products *may* be imported into and distributed from the Suffolk RDC. Because the Court cannot give Seoul's choice of forum substantial weight, if much weight at all, this factor favors transfer to the Northern District of Illinois. *See Samsung Elecs.*, 386 F. Supp. at 715.

---

[5] In their Opposition brief, Seoul references "additional products manufactured by third[ ]parties that Ace Hardware [allegedly] imports and sells in this District [that] infringe the patents-in-suit and are relevant to this case." (ECF No. 19, at 19.) However, Seoul does not list these additional products in its Complaint. Seoul suggests that it intended to request leave to amend the Complaint to include the additional products, but until it does so, this Court will not consider allegations pertaining to them. (*See* ECF No. 19, at 19 n.10.)

## 2. The Convenience to the *Parties* Weighs in Favor of Transfer

The Court must next evaluate the second "principal factor" in transfer cases: convenience to the *parties*. *Samsung*, 386 F. Supp. 2d at 715. The convenience to Seoul and Ace Hardware favors transfer. In so finding, the Court reviews three aspects of the convenience to the parties analysis: "ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the availability of compulsory process." *Byerson v. Equifax Infor. Services, LLC*, 467 F. Supp. 2d 627, 633 (E.D. Va. 2006) (citing *Samsung*, 386 F. Supp. 2d at 717 n. 13). Transfer is not appropriate when "the result of transfer would serve only to 'shift the balance of inconvenience'" from one party to another. *Board of Tr. Sheet Metal Workers Nat. Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1258 (E.D. Va. 1988) (quoting *Eastern Sci. Marketing v. Tekna-Seal Corp.*, 696 F. Supp. 173, 180 (E.D. Va. 1988)). Here, the convenience of the parties favors transfer because two out of its three subparts weigh in favor of transfer: (1) access to sources of proof is easier in Illinois, (2) the cost of obtaining the attendance of witnesses is lower in Illinois, and (3) the availability of compulsory process stands neutral.

### a. The Ease of Access to Sources of Proof in the Northern District of Illinois Favors Transfer

As to ease of access to proof as the first part of the convenience to *parties* analysis, this Court has previously held that "[i]n actions alleging patent infringement, because the bulk of relevant evidence comes from the accused infringer, [] the place where [the] defendant's documents are kept weighs in favor of transfer to that location." *ThroughPuter*, 2022 WL 874319, at *10 (first and second alteration in original) (citation omitted). Easier access to sources of proof exists in the Northern District of Illinois.

Ace Hardware's headquarters is located in Oak Brook, Illinois. "Ace Hardware maintains its physical and electronically stored records as they relate to sales, marketing, manufacturing, product development, and research at its principal place of business [which is in Oak Brook, Illinois]." (ECF No. 15-3, at 2.) Thus, the documents relevant to this matter, whether in physical or electronic form, are largely housed in Illinois. (ECF No. 14, at 13, 15.)

Seoul's argument that evidence regarding the importation of the allegedly infringing products "will come from documents housed in Virginia, [because] the Suffolk, Virginia [RDC] . . . is Ace[ Hardware's] main hub for importation on the Eastern Seaboard" is unavailing. (ECF No. 19, at 22.) Indeed, the record suggests the inverse. As noted above, Ace Hardware RDC Import Manager Massey declares that the alleged infringing products do *not* pass through the facility in Suffolk. (ECF No. 15-2, at 2.) Indeed, even with Seoul's submitted documents, the record does not reliably suggest that the Suffolk warehouse has *any* relevant documents. But importation aside, none of the evidence suggests the Suffolk warehouse would be the hub of needed documents. For example, Seoul does not indicate that documents pertaining to whether the Ace Hardware's products infringe their patents are housed in Suffolk.

It is correct that, given the advances in technology, the comparatively low cost of transporting documents, "can make [document] location a less pressing consideration when deciding a motion to transfer venue." *Finkel v. Subaru of Am., Inc.*, No. 3:06cv292, 2006 WL 2786811, at *3 (E.D. Va. Sept. 26, 2006); *see also NanoEntek*, 2011 WL 6023189, at *4 (agreeing that "changes in technology have lessened the importance of the court's proximity to physical documentation."). Although the convenience of access to proof may not weigh *as heavily* in favor of transfer given the ease with which information can be transmitted, it still

15

weighs in Ace Hardware's favor because the documents are principally located and more easily accessed in the Northern District of Illinois.

### b. The Cost of Obtaining Witnesses Would Be Lower in the Northern District of Illinois

While the parties largely address this second consideration about convenience to the *parties* in tandem with principal factor three, the convenience to the *witnesses*, the Court concludes that the cost of obtaining witnesses would also be lower in Illinois. This logically follows a finding regarding access to proof. Furthermore, as the Court will address in detail when assessing the third *principal* factor of convenience to the *witnesses*, the majority of relevant witnesses will be in Illinois. Therefore, the cost of obtaining witnesses would be lower in the transferee court.[6]

### c. The Availability of Compulsory Process Stands Neutral

The third factor the Court must weigh when assessing convenience to the *parties*, the "availability of compulsory process," targets the availability of compulsory process for the attendance of unwilling witnesses. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). This factor encompasses the need to subpoena witnesses to appear at trial and requires a showing that "witnesses who are beyond compulsion will not appear . . . voluntarily." *Samsung*, 386 F. Supp. 2d at 718. Ace Hardware states that it is "under the impression that any third-party witnesses are located beyond this Court's subpoena power—namely, in the greater Chicago area." (ECF No. 14, at 15.) In response, Seoul contends that "third-party witnesses and individual contractor

---

[6] The Court declines to evaluate with precision the parties' positions with respect to relative cost of transportation to Chicago versus to Washington, D.C. Because the "center of the accused activity" clearly lies where Ace Hardware resides in Illinois, this record demonstrates that the cove of relevant evidence will rest there. *See Acterna*, 129 F. Supp. 2d at 939. Conducting discovery of that activity entirely from Virginia would stray too far from the hub of activity of the infringement alleged.

employees of Expeditors [in Virginia] might not be willing to appear voluntarily if the trial is in Illinois, which is more than 100 miles from the Suffolk, Virginia warehouse." (ECF No. 19, at 18.) But this Court already has found that this record does not suggest that the Suffolk Expeditors employees will have relevant testimony.

Moreover, aside from conclusory statements about potential non-party witnesses being located outside of the Court's subpoena power, neither party provides any specific indication that these non-party witnesses would not willingly appear for trial, if needed. *See* Fed. R. Civ. P. 45[7] (describing the geographic scope of the court's subpoena power). The extent to which non-party witnesses would be within the United States District Court for the Northern District of Illinois' subpoena power, or within this Court's subpoena power, remains unclear. (ECF No. 19, at 26 ("[T]hird-party LED lighting manufacturers . . . can testify to the design and technical details of the accused LED lighting products," but "*[n]one* of them are located in Illinois or the Chicago area.")); (ECF No. 30, at 9 ("Expeditor is a global logistics company and warehouse manager.[] There is no reason to believe . . . that Expeditor is familiar with the accused products, let alone the technologies implicated by the asserted patents").) Because both parties' arguments regarding non-party witnesses amount to conjecture, the Court sees this third factor as neutral with regard to the transfer analysis.

---

[7] Federal Rule of Civil Procedure 45(c)(1) allows a subpoena to:

> command a person to attend a trial, hearing, or deposition only . . . (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense.

Fed. R. Civ. P. 45(c)(1). Illinois and Virginia are more than 100 miles apart.

In sum, because sources of proof would be easier to access in the Northern District of Illinois, the cost of obtaining attendance of witnesses would be lower in the Northern District of Illinois, and the availability of compulsory process stands neutral, principal factor two—the convenience to the *parties*—favors transfer to the Northern District of Illinois.

### 3. The Convenience of the *Witnesses* Weighs in Favor of Transfer

The third "principal factor," the convenience to the *witnesses*, strongly favors transfer to the Northern District of Illinois. *Samsung*, 386 F. Supp. 2d at 715. Ace Hardware asserts that "[a]ll of [its] relevant witnesses . . . are likely to be Illinois." (ECF No. 14, at 13; *see also* ECF No. 14, at 15 (citing ECF No. 15-3 ¶¶ 4, 6, 8–9).)

RDC Import Manager Massey's Declaration supports Ace Hardware's assertion that all relevant witnesses are located in Illinois. He states that neither he nor the other three Ace Hardware employees located at the Suffolk RDC would be "witnesses whose testimony is central to a claim" at issue in this matter. *Shenton v. Aerojet Rocketdyne, Inc.*, Case No. 3:17cv404, 2018 WL 2729234, at *4 (E.D. Va. May 21, 2018) (citing *Lycos, Inc. v. TiVo, Inc.,* 499 F. Supp. 2d 685, 693 (E.D. Va. 2007)). Massey declares that the accused products do not pass through the Suffolk RDC. (ECF No. 15-2, at 2.) He also avers that he "and the other three Ace Hardware employees in Suffolk[] are not involved in the selection, ordering, sales, or returns of the products that are received [there]." (ECF No. 15-2, at 3.) Instead, he says that they "focus only on intake of shipments designated for delivery [in Suffolk] by headquarters and the corresponding redistribution of product to a Retail Support Center." (ECF No. 15-2, at 3.) Thus, this Court deems it unlikely that Massey or the other three Ace Hardware employees working at the Suffolk RDC would possess important information pertaining to claims or defenses relevant in this case.

18

Because virtually all of Ace Hardware's party witnesses would be located in Illinois, and no critical witnesses are located in the Eastern District of Virginia, transfer of this case to the Northern District of Illinois should proceed. *See Shenton*, 2018 WL 2729234, at *4 (citing *Lycos,* 499 F. Supp. 2d at 693 ("[G]reater weight is given to the potential inconvenience of witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue"); *Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 317 (E.D. Va. 2013) (citing *Verizon Online Servs., Inc. v. Ralsky,* 203 F.Supp.2d 601, 623 (E.D. Va. 2002) ("Making attendance more convenient or affordable for a willing witness still weighs in favor of transfer, just not as heavily.")).

Seoul's arguments pertaining to RDC Import Manager Massey, the three other employees present in Suffolk, and third-party contractor Expeditors, do not prevail. Seoul's continued references to the Suffolk RDC serving as Ace Hardware's "main hub for importation on the Eastern Seaboard" meaning that employees there will be a source of important information pertaining to importation of the accused products, do nothing to change the Court's contrary determination in light of the Massey Declaration. (ECF No. 19, at 22–23). Further, Seoul's contentions regarding Expeditors do not persuade because Seoul does not offer insight as to what information Expeditor employees would have, if any. For these reasons, principal factor three, convenience of the witnesses, favors transfer.

### 4. The Interest of Justice Favors Transfer

The final "principal factor, the interest of justice," slightly favors transfer to the Northern District of Illinois. *Samsung*, 386 F. Supp. 2d at 715. The interest of justice factor "encompasses public interest factors aimed at 'systemic integrity and fairness.'" *ThroughPuter*, 2022 WL 874319, at *13 (quoting *Samsung*, 386 F. Supp. 2d at 721). "Most prominent among

the elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* (quoting *Byerson*, 467 F. Supp. 2d at 635). In analyzing fairness, courts consider "docket congestion, interest in having local controversies decided at home, knowledge of applicable law, unfairness in burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.* (citing *Samsung*, 386 F. Supp. 2d at 721 n. 16).

First, consideration of systemic integrity slightly favors keeping this lawsuit in the Eastern District of Virginia. This Court "has already committed judicial resources to [a contested issue of venue] and is familiar with the facts of the case." *Id.* The same cannot yet be said for the United States District Court for the Northern District of Illinois. But transfer would avoid any inconsistent judgments to the extent concern about that need be weighed.

As to fairness, many of the five considerations stand neutral. First, docket conditions weigh neither in favor of transfer nor against it because the parties do not cite evidence as to that consideration. Second, "[b]ecause this action arises under federal law, 'this Court cannot be presumed to have greater knowledge of the applicable law than does the federal court in'" the Northern District of Illinois. *Id.* (quoting *Byerson*, 467 F. Supp. 2d at 635). Third, "conflicts of law issues are unlikely to arise" because Seoul has "not previously litigated the asserted patents here or in" the Northern District of Illinois. *Id.* (citation omitted). Fourth, no party has indicated that trial in the Northern District of Illinois would unfairly burden jurors living there.

But the fifth factor as to fairness, "[t]he interest in having local controversies decided at home . . . weighs . . . in favor of transfer." *ThroughPuter,* 2022 WL 874319, at *14. This case involves conduct based in Illinois. *See id.* (stating that "all allegedly 'willful' actions took place in the" transferee district); (ECF No. 15-3, at 2–3). Indeed, Ace Hardware has provided persuasive information that the Suffolk RDC used as the basis for venue in the Eastern District of

Virginia has no meaningful relationship to the accused products. (ECF No. 15-2, at 2; ECF No. 15-3, at 2–3.) "Courts are traditionally willing to transfer cases to the districts in which the events giving rise to the suits occurred." *ThroughPuter,* 2022 WL 874319, at \*14 (quoting *Finkel*, 2006 WL 2786811, at \*5). "Because the alleged conduct giving rise to this action occurred in the" Northern District of Illinois, the interest in having local controversies decided at home strongly favors transfer. *Id.*

The desire for system integrity by keeping this case in the Eastern District of Virginia because of its expenditure of time on this Motion—to the extent it pertains—is far outweighed by the interest of having local controversies decided at home. Thus, the interest of justice also supports transfer to Illinois.

### IV.  Conclusion

Because the case could have been brought in the Northern District of Illinois and because the balance of relevant factors strongly weighs in favor of transfer, the Court finds transfer to the Northern District of Illinois appropriate. Accordingly, for the foregoing reasons, the Court grants the Motion in the alternative and will transfer this matter to the Northern District of Illinois. (ECF No. 13.)

An appropriate Order shall issue.

Date: 03/31/23
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

21