**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **SEOUL SEMICONDUCTOR CO., LTD., a Korean corporation, SEOUL VIOSYS CO., LTD., a Korean corporation,**<br><br>　　　　**Plaintiffs,**<br><br>　　　　**v.**<br><br>**Ace Hardware Corporation,**<br><br>　　　　**Defendant.** | **Civil Action No. 1:23-cv-02690** |

**MOTION TO STAY AND SUPPORTING BRIEF**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

    A.    Plaintiffs Engaged In An Onslaught Of Third-Party Patent Assertions. ...................2

    B.    Plaintiffs' Suit Against Ace Hardware Is Based On A Shifting And Inconsistent List of Patents ....................................................................................................3

III.    LEGAL STANDARDS .........................................................................................5

    A.    This Court Regularly Stays Matters Where Judicial Efficiency And Justice So Warrant. ...................................................................................................5

    B.    The Customer-Suit Exception ...........................................................................6

IV.    ARGUMENT: A STAY PENDING RESOLUTION OF AT LEAST THE *FEIT ELECTRIC* ACTION WILL SIMPLIFY THE ISSUES FOR THIS COURT TO DECIDE ....................7

    A.    Determinations In The *Feit Electric* Action Will Eliminate Issues From This Action. ..................................................................................................................7

    B.    A Stay Pending Resolution Of At Least The *Feit Electric* Action Will Reduce The Burden Of Litigation .......................................................................................12

    C.    A Stay Does Not Create A Tactical Advantage for Either Party, And No Party Will Be Unduly Prejudiced By The Requested Stay. .......................................................13

        1.    Each of the Prejudice Subfactors Favors A Stay. ..........................................13

        2.    Additional Factors Support A Stay. ..............................................................14

V.    CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.P.T., Inc. v. Quad Envtl. Tech. Corp.*,
  698 F. Supp. 718 (N.D. Ill. Oct. 27, 1988) ...................................................................6

*Abbott Labs v. Mylan Pharmaceuticals*,
  37 F. Supp. 2d 1076 (N.D. Ill. March 8, 1999).........................................................7

*Berkeley\*IEOR v. Teradata Operations, Inc.*,
  No. 17 C 7472, 2019 WL 1077124 (N.D. Ill. Mar. 7, 2019) ...................................6

*Blonder-Tongue Labs., Inc. v. University of Illinois Found*,
  402 U.S. 313 (1971)...................................................................................................7

*CANVS Corp. v. United States*,
  118 Fed. Cl. 587 (2014) .........................................................................................13

*Cherokee Nation of Okla. v. United States*,
  124 F.3d 1413 (Fed. Cir. 1997).................................................................................5

*Clinton v. Jones*,
  520 U.S. 681 ............................................................................................................5

*Consumer Fin. Prot. Bureau v. Transunion*,
  2023 WL 3605995 (N.D. Ill. April 13, 2023)...........................................................6

*In re Google Inc.*,
  588 F. App'x 988 (Fed. Cir. 2014) ...........................................................................7

*Ind. State Police Pension Trust v. Chrysler LLC*,
  556 U.S. 960 (2009)...................................................................................................6

*Joao Bock Transaction Systems, LLC v. First Nat. Bank*,
  2013 WL 4840240 (N.D. Ill. Sept. 10, 2013) .........................................................12

*Katz v. Lear Siegler*,
  Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990) .........................................................6, 7

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)................................................................................................5, 6

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
  2018 WL 3059604 (N.D. Ill. June 20, 2018) .........................................................12

*Markel Am. Ins. Co. v. Dolan*,
  787 F.Supp.2d 776 (N.D. Ill. May 11, 2011) ...........................................................6

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014)...........................................................................7, 12

*Robinson v. Walgreen Co.*,
  2021 WL 2453069 (N.D. Ill. June 16, 2021) ...........................................................6

*Satco Products, Inc. v. Seoul Semiconductor Co., Ltd. et al*,
  Case No. NDGA-1-21-cv-00643 (N.D. Ga.) ..............................................................2

*Seoul Semiconductor Co. et al. v. Ace Hardware Corp.*,
  3:22-cv-00271 (E.D. Va.) .........................................................................................4

*Seoul Semiconductor Co. et al. v. Ace Hardware Corp.*,
  6:21-cv-01060 (W.D. Tex.) ..............................................................................3, 4, 8

*Seoul Semiconductor Co., Ltd. et al v. Archipelago Lighting, Inc.*,
  Case No. CDCA-5-17-cv-01890 (C.D. Cal.) ...........................................................3

*Seoul Semiconductor Co., Ltd. et al v. Bed Bath and Beyond, Inc.*,
  Case No. CDCA-2-18-cv-03837 (C.D. Cal.) ........................................................1, 2

*Seoul Semiconductor Co., LTD et al v. The Factory Depot Advantages, Inc.*,
  Case No., CDCA-2-19-cv-05065 (C.D. Cal.) ...........................................................3

*Seoul Semiconductor Co., Ltd. et al v. Feit Electric Company, Inc.*,
  Case No. 2-22-cv-05097 (C.D. Cal.) ................................................................ passim

*Seoul Semiconductor Co., Ltd. et al v. Finelite, Inc.*,
  Case No. NDCA-3-22-cv-02869 (N.D. Cal) ............................................................5

*Seoul Semiconductor Co., Ltd. et al v. Fry's Electronics, Inc.*,
  Case No. EDTX-2-18-cv-00386 (E.D. Tex.) ...........................................................3

*Seoul Semiconductor Co., Ltd. et al v. GE Healthcare, Inc.*,
  Case No. DDE-1-22-cv-01455 (D. Del.) .................................................................5

*Seoul Semiconductor Co., Ltd. et al v. Onyx Enterprises Intl Corp.*,
  Case No. DNJ-3-20-cv-05955 (D.N.J.) ...................................................................3

*Seoul Semiconductor Co., Ltd. et al v. Philcor TV & Electronic Leasing, Inc. d/b/a
  energyavenue.com*,
  Case No. DNV-2-18-cv-00383 (D. Nev.) .................................................................3

*Seoul Semiconductor Co., Ltd. et al v. Satco Products, Inc.*,
  Case No., C.A. No. 2:19-cv-04951-GRB-AYS (EDNY) ..........................................2

*Seoul Semiconductor Co., Ltd. et al v. Satco Products, Inc.*,
  Case No. EDNY-1-19-cv-06719 (E.D.N.Y.) ............................................................2

*Seoul Semiconductor Co., Ltd. v. Craig Electronics, Inc.*,
  Case No. SDFL-1-14-cv-22728 (S.D. Fl.) ...............................................................3

*Seoul Semiconductor Co., Ltd v. Curtis International, LTD.*,
  Case No. CDCA-2-14-cv-09466 (C.D. Cal.) ...........................................................2

*Seoul Semiconductor Company, Ltd. et al v. Healthe, Inc.*,
  Case No. MDFL-6-19-cv-02264 (M.D. Fl.) .............................................................2

*Seoul Semiconductor Company, Ltd. et al v. VividGro, Inc.*,
  Case No. MDFL-6-19-cv-02263 (M.D. Fl) ..............................................................2

*Sillage LLC v. Kenrose Perfumes Inc.*,
  2015 WL 3649605 (C.D. Cal. June 9, 2015) .........................................................12

*SpeedTrack, Inc. v. Office Depot, Inc.*,
  791 F.3d 1317 (Fed. Cir. 2015)............................................................................8

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011)............................................................................7

*T-Rex Prop. AB v. Adaptive Micro Sys., LLC*,
  2017 WL 372311 (N.D. Ill. Jan. 26, 2017) ..................................................13, 14

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
  458 F.3d 1335 (Fed. Cir. 2006)............................................................................7

*Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*,
  2015 WL 1396632 (N.D. Ill. March 25, 2015) ............................................13, 14

*VirtualAgility Inc. v. Salesforce.com*,
  759 F.3d 1307 (Fed. Cir. 2014)..........................................................................14

## Statutes

28 U.S.C. § 1400.................................................................................................4

## I.    INTRODUCTION

Plaintiffs have no pressing legal right that this Court must timely adjudicate.  Rather, this is just one of dozens of cases—nearly all of which are closed—brought by Plaintiffs because they could not sue the real defendants-of-interest in their preferred forum.  At issue is a set of nuanced patents in the field of manufacturing and design of light emitting diode ("LED") semiconductors.[1]  Defendant, Ace Hardware Corporation ("Ace Hardware" or "Defendant") does not design, manufacture or sell semiconductors.  Ace Hardware is a major retailer of tools and home improvement goods.  This includes light bulbs that Plaintiffs allege include *components* that infringe a moving target of patents.  Plaintiffs nevertheless have engaged in an onslaught of litigation against Ace Hardware and other third-party retailers. *See Seoul Semiconductor Co., Ltd. et al v. Bed Bath and Beyond, Inc*., Case No. CDCA-2-18-cv-03837 (C.D. Cal.).

In reality, Plaintiffs use this Court as a leverage play.  Plaintiffs are manufacturers and suppliers of LED semiconductors.  They previously provided their LED semiconductors to light bulb suppliers such as Feit Electric Company ("Feit Electric") but were unable to keep up with growing market demands and ultimately no longer provide LEDs to some of the larger light bulb suppliers.  Plaintiffs are now trying to sue their way back into the position of an LED semiconductor supplier to the light bulb suppliers.  Notably, however, Plaintiffs have sued Feit Electric, one of those light bulb suppliers, for infringement relating to the same products.  *See Seoul Semiconductor Co., Ltd. et al v. Feit Electric Company, Inc.*, Case No. 2-22-cv-05097 (C.D. Cal.) (the "*Feit Electric* Action").  That matter has already progressed to the contention phase, and a resolution in that case will likely resolve many of the issues here.  Indeed, many of

---

[1] U.S. Pat. Nos. 7,572,653 ("the '653 patent"), 7,667,225 ("the '225 patent"), 8,604,496 ("the '496 patent"), 8,659,050 ("the '050 patent"), 8,981,410 ("the '410 patent"), 9,716,210 ("the '210 patent"), 10,134,967 ("the '967 patent"), 7,397,069 ("the '069 patent"), 9,147,821 ("the '821 patent"), and 9,269,868 ("the '868 patent") (collectively "Asserted Patents"). (*See* Dkt. 1.)

Plaintiffs' accused products are likely to be Feit Electric products or use the same LED semiconductors used in Feit Electric Products, such that this Court and the parties will encounter substantial overlap and waste judicial resources.

Under such circumstances, judicial efficiency and the interests of justice warrant this Court exercising its discretion to stay this matter pending the resolution of Plaintiffs' concurrent litigation against Feit Electric. Not only will scores of issues necessary for this Court to resolve be addressed in that matter, *e.g.*, claim construction, application of technologies, exhaustion of patent rights, etc., but the *Feit Electric* Court will likely resolve Plaintiffs' infringement claims with respect to products in this matter. Without such relief, this Court runs the risk of inconsistent rulings and almost certainly will waste resources. In short, judicial efficiency demands that this case should proceed only if necessary after final resolution of the *Feit Electric* Action. The Court should issue a discretionary stay.

## II. BACKGROUND

### A. Plaintiffs Engaged In An Onslaught Of Third-Party Patent Assertions.

Plaintiffs have asserted seven of the ten Asserted Patents (some while searching for proper venue for this case), *i.e.*, the '967 patent, the '225 patent, 'the 210 patent, the '868 patent, the '496 patent, the '410 patent, and the '653 patent, against numerous other parties. *See Seoul Semiconductor Co., Ltd. et al v. Satco Products, Inc.*, Case No., C.A. No. 2:19-cv-04951-GRB-AYS (EDNY); *Seoul Semiconductor Company, Ltd. et al v. Healthe, Inc.*, Case No. MDFL-6-19-cv-02264 (M.D. Fl.); *Seoul Semiconductor Company, Ltd. et al v. VividGro, Inc.*, Case No. MDFL-6-19-cv-02263 (M.D. Fl); *Seoul Semiconductor Co., Ltd* v. *Curtis International, LTD*., Case No. CDCA-2-14-cv-09466 (C.D. Cal.); *Satco Products, Inc. v. Seoul Semiconductor Co., Ltd. et al*, Case No. NDGA-1-21-cv-00643 (N.D. Ga.); *Seoul Semiconductor Co., Ltd. et al v. Bed Bath and Beyond, Inc*., Case No. CDCA-2-18-cv-03837 (C.D. Cal.); *Seoul Semiconductor*

*Co., Ltd. et al v. Satco Products, Inc.*, Case No. EDNY-1-19-cv-06719 (E.D.N.Y.); *Seoul Semiconductor Co., LTD et al v. The Factory Depot Advantages, Inc.*, Case No., CDCA-2-19-cv-05065 (C.D. Cal.); *Seoul Semiconductor Co., Ltd. v. Craig Electronics, Inc*., Case No. SDFL-1-14-cv-22728 (S.D. Fl.); *Seoul Semiconductor Co., Ltd. et al v. Fry's Electronics, Inc*., Case No. EDTX-2-18-cv-00386 (E.D. Tex.); *Seoul Semiconductor Co., Ltd. et al v. Philcor TV & Electronic Leasing, Inc. d/b/a energyavenue.com*, Case No. DNV-2-18-cv-00383 (D. Nev.); *Seoul Semiconductor Co., Ltd. et al v. Archipelago Lighting, Inc.*, Case No. CDCA-5-17-cv-01890 (C.D. Cal.); *Seoul Semiconductor Co., Ltd. et al v. Onyx Enterprises Intl Corp.*, Case No. DNJ-3-20-cv-05955 (D.N.J.). These cases are now closed.

### B. Plaintiffs' Suit Against Ace Hardware Is Based On A Shifting And Inconsistent List of Patents

Plaintiffs are aggressive patent prosecutors and have amassed a significant patent portfolio. But Plaintiffs' patents are in overlapping and redundant categories such that even Plaintiffs have difficulty determining which patents to assert. This case is a perfect example.

Plaintiffs originally sued Ace Hardware on Oct. 12, 2021, in the Western District of Texas alleging infringement of fifteen patents: U.S. Pat. Nos. 8,314,440 ("the '440 patent"), 9,627,435("the '435 patent"), 9,093,627("the '627 patent"), 7,667,225" ("the '225 patent"), 9,269,868 ("the '868 patent"), 8,604,496 ("the '496 patent"), 8,659,050 ("the '050 patent"), 9,147,821 ("the '821 patent"), 8,872,419 ("the '419 patent"), 10,916,684 ("the '684 patent"), 9,041,032 ("the '032 patent"), 10,573,785 ("the '785 patent"), 8,716,946 ("the '946 patent"), 9,022,618 ("the '618 patent"), and 7,901,113 ("the '113 patent"). *See Seoul Semiconductor Co. et al. v. Ace Hardware Corp*., 6:21-cv-01060 (W.D. Tex.), Dkt. 1. Ace Hardware promptly moved to dismiss or transfer because Plaintiffs could not establish venue under 28 U.S.C. §1400. Plaintiffs voluntarily dismissed their complaint before the court could rule. (*See id.* at Dkt. 29.)

That same day, Plaintiffs brought a sister action against Ace Hardware in the Eastern District of Virginia.  Plaintiffs, however, asserted different patents.  Of the prior fifteen patents, Plaintiffs asserted six in this new round:  the '225 patent, the '868 patent, the '496 patent, the '050 patent, the '821 patent, and the '653 patent.  Plaintiffs dropped the other nine patents and added four new patents:  the '410 patent, the '210 patent, the '967 patent, and the '069 patent. *See Seoul Semiconductor Co. et al. v. Ace Hardware Corp*., 3:22-cv-00271 (E.D. Va.), Dkt. 1. These patents all relate to the manufacture and design of LED semiconductors.

Ace Hardware again promptly moved to dismiss or transfer because venue was improper in Virginia. The Court agreed and transferred the case to this Court. (*See id.* at Dkt. 46.)

Plaintiffs continue to conflate their patents, no doubt due to their technological overlap. On August 5, 2023, Plaintiffs served Ace Hardware their Court-ordered settlement proposal. That proposal cited a *different* set of patents than those asserted in Plaintiffs' complaint.  Indeed, *none* of the patents listed in Plaintiffs' settlement proposal in this matter are Asserted Patents against Ace Hardware.  This tacit admission by Plaintiffs underscores that this larger collection of Plaintiff's patents are interchangeable and interconnected, recycled and reused in this and other cases.  At least three of the patents in Plaintiffs' settlement demand (the '435 patent, the '946 patent, and the '684 patent) are currently at issue in the *Feit Electric* Action.  (*See* Dkt. 1; *Feit Electric* Action, Dkt. 1; Exs. A-C.)  In addition, three Asserted Patents (the '225 patent, the '210 patent, and the '967 patent) overlap the asserted patents in the *Feit Electric* Action.

Plaintiffs own conduct, treating its patents as fungible items, establishes that the patents are closely related technology, warranting caution when cases are proceeding in parallel. Notably, at least three cases involving several Asserted Patents are ongoing, including the *Feit Electric* Action.  *See Seoul Semiconductor Co., Ltd. et al v. Finelite, Inc.,* Case No. NDCA-3-22-

cv-02869 (N.D. Cal); *Seoul Semiconductor Co., Ltd. et al v. GE Healthcare, Inc*., Case No. DDE-1-22-cv-01455 (D. Del.); *Seoul Semiconductor Co., Ltd. et al v. Feit Electric Company, Inc.*, Case No. 2-22-cv-05097 (C.D. Cal.). These concurrent proceedings form the basis of Ace Hardware's stay motion.

## III.    LEGAL STANDARDS

### A.    This Court Regularly Stays Matters Where Judicial Efficiency And Justice So Warrant.

The Court possesses inherent authority to stay cases before it, including until the resolution of other suits to avoid duplicate or inconsistent rulings. *See Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("The power of a federal trial court to stay its proceedings, even for an indefinite period of time, is beyond question. This power springs from the inherent authority of every court to control the disposition of its cases. When and how to stay proceedings is within the sound discretion of the trial court.") (internal citations omitted); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Clinton v. Jones*, 520 U.S. 681, 684 ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.").

When determining whether to grant a stay, the Court should consider "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Consumer Fin. Prot. Bureau v. Transunion*, 2023 WL 3605995, *1 (N.D. Ill. April 13, 2023) (quoting *Berkeley*IEOR v. Teradata Operations, Inc.*, No. 17 C 7472, 2019 WL 1077124, *5 (N.D. Ill. Mar. 7, 2019) (internal

citations omitted)).  In deciding whether to grant a stay, courts will "balance the competing interests of the parties and the interest of the judicial system." *Markel Am. Ins. Co. v. Dolan*, 787 F.Supp.2d 776, 779 (N.D. Ill. May 11, 2011) (citing *Landis*, 299 U.S. at 254 (The court "must weigh competing interests and maintain an even balance.")).  The party seeking a stay "bears the burden of proving that the court should exercise its discretion in staying the case." *Robinson v. Walgreen Co*., 2021 WL 2453069, at *1 (N.D. Ill. June 16, 2021) (citing *Ind. State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960, 961 (2009)).

## B.    The Customer-Suit Exception

The "customer suit" doctrine holds that patent litigation should proceed against the real party in interest, *i.e.*, the one best positioned to defend against the patent claims.  *See Katz v. Lear Siegler*, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990) (finding the case against the manufacturer would resolve the major issues of patent infringement, patent validity, and the purported patentee's capacity to sue).  Under the customer suit doctrine, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."  *Id.*  Customers of the manufacturer have little ability to defend against claims of infringement, so these cases are not given the same preference or weight in deciding which of two or more matters filed in different Federal courts should be permitted to proceed.  *See A.P.T., Inc. v. Quad Envtl. Tech. Corp.,* 698 F. Supp. 718, 721 (N.D. Ill. Oct. 27, 1988).  As courts have stated, "the guiding principles in the customer suit exception cases are efficiency and judicial economy[.]"  *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).  Under this doctrine, litigation against a manufacturer of accused goods takes precedence over suits against the manufacturer's customers, because the manufacturer is the true defendant.  *See Katz*, 909 F.2d at 1464.

To warrant a stay of the customer suit, "the manufacturer's case need only have the potential to resolve the 'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464). Courts use a "flexible approach, including staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected." *In re Google Inc*., 588 F. App'x 988, 991 (Fed. Cir. 2014); *see also In re Nintendo of Am., Inc*., 756 F.3d 1363, 1365 (Fed. Cir. 2014) (stating the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination").

## IV. ARGUMENT: A STAY PENDING RESOLUTION OF AT LEAST THE *FEIT ELECTRIC* ACTION WILL SIMPLIFY THE ISSUES FOR THIS COURT TO DECIDE

Staying this action will simplify this Court's consideration of ten patents and dozens, if not hundreds, of accused products. Staying this action will also reduce the burden of litigation on the Court and parties without prejudicing Plaintiffs.

### A. Determinations In The *Feit Electric* Action Will Eliminate Issues From This Action.

An invalidity determination of the Asserted Patents in the *Feit Electric* Action will eliminate those patents from this case. An invalidity determination has preclusive effect. *See Abbott Labs v. Mylan Pharmaceuticals*, 37 F. Supp. 2d 1076, 1078 (N.D. Ill. March 8, 1999) (citing *Blonder-Tongue Labs., Inc. v. University of Illinois Found*, 402 U.S. 313, 330 (1971)). There are three patents that overlap between the *Feit Electric* Action and this case. Any invalidity determinations by the *Feit Electric* Court regarding these patents are binding here. The *Feit Electric* Action therefore has the potential to eliminate 30% of the Asserted Patents. Just as important, any invalidity determinations will provide significant substantive insight into the patents, claims, discovery, and resolution pathways in this case.

A non-infringement determination relating to the Asserted Patents in the *Feit Electric* Action will also have a preclusive effect for accused products and products containing LED semiconductors common to both actions.[2] A determination of non-infringement against a product is binding in successive actions brought by the same party. *See SpeedTrack, Inc. v. Office Depot, Inc.*, 791 F.3d 1317, 1324 (Fed. Cir. 2015) (affirming summary judgment barring infringement claims asserted against the manufacturer's customer in view of prior adjudication of non-infringement of the same product in a case against the manufacturer.) A non-infringement determination in Plaintiffs' current case against Feit Electric potentially moots the assertions against Feit Electric's products at issue here, and possibly others depending on the similarities between the industry's various LED semiconductors.[3] Even if some patents were to survive because they were not overlapping, the California Court rulings would be guiding and provide strong incentives for the parties to seek resolution without further litigation.

The streamlining effect of staying this case pending the outcome of the *Feit Electric* Action extends beyond the directly overlapping asserted patents and accused products.

---

[2] This case and the *Feit Electric* Action have overlapping accused products. The accused product identified in Plaintiff's Complaint here, *i.e.*, FEITBPST19/LED(K) LED, is also accused in the *Feit Electric* Action. (*See* Dkt. 1.) Plaintiffs accused the following Feit Electric products against Ace Hardware in the Western District of Texas and in the *Feit Electric* Action: FEIT72018, FEITSL24-12/RGBW/AG, FEIT72122, FEIT74206/CA/V2, FEIT74104, FEIT73992-CAN, FEIT72102, FEIT74202/CA, FEIT74006/CA, FEIT74303, FEIT73719, FEIT71801, FEIT71800, FEIT73708, FEIT72065, FEIT74212 and FEIT74218. (*See* Exhibit D, Infringement Contentions.) Counsel for Plaintiffs advised Ace Hardware on the eve of the Ace Hardware's deadline to file this motion that it did not anticipate accusing any additional Feit Electric branded products or products sold by Feit Electric to Ace Hardware in its infringement contentions in this case. Of course, Plaintiffs' counsel's self-serving representations are difficult to square with Plaintiffs infringement contentions served in the predecessor W.D. Tex. case against Ace Hardware, which accused literally *dozens* of additional Feit Electric branded products of infringement, and the complaint filed in this case, which accuses a Feit Electric branded product of infringement. Ace Hardware anticipates that Plaintiffs will accuse the same products here as well as any additional products accused in the *Feit Electric* Action that are sold at Ace Hardware. Additionally, in the *Feit Electric* Action, the Court granted in part Feit Electric's motion to strike Plaintiffs' infringement contentions and found that Plaintiffs' representative charting was insufficient because of Plaintiffs' 396 accused instrumentalities, Plaintiffs charted only 241. (*See Feit Electric* Action, Dkt. 90.)

[3] Notably, on the basis of purported confidentiality, Plaintiffs have refused to allow Ace Hardware to see the contentions in the *Feit Electric* Action other than the cover document, keeping Ace Hardware and this Court in the dark of the significant overlap.

**First**, the Asserted Patents that Plaintiffs **did not** assert in the *Feit Electric* Action share the same subject matter with the patents that Plaintiffs **did** assert in the *Feit Electric* Action. All of the patents asserted in this action and in the *Feit Electric* Action generally relate to LED semiconductors. Given the overlapping subject matter, Ace Hardware and Feit Electric are likely to identify similar prior art references and invalidity arguments against many of these patents. Any disputes over the disclosures of such references will likely overlap. Similarly, disputes over whether certain references even qualify as prior art may overlap. And any invalidity determinations may have persuasive effect relating to the Asserted Patents given the overlapping subject matter. Staying this case to permit the *Feit Electric* Court to first address these issues will streamline or perhaps eliminate them here.

**Second**, the Asserted Patents that Plaintiffs **did not** assert in the *Feit Electric* Action have overlapping claim terms with the patents that Plaintiffs **did** assert in the *Feit Electric* Action. At least the following claim terms are common to patents asserted in the *Feit Electric* Action and here:[4]

| Claim Term | Asserted Patent (This case) | Asserted Patent (*Feit Electric* Action) |
|---|---|---|
| "light emitting diode" | '653 patent, '050 patent, '410 patent, '210 patent | '314 patent, '157 patent, '912 patent, '684 patent, '933 patent |
| "light emitting device" | '225 patent, '967 patent, '821 patent | '800 patent, '684 patent,' '435 patent, '946 patent |
| "semiconductor device" | '496 patent, '069 patent | '435 patent |
| "substrate" | '653 patent, '225 patent, '410 patent | '314 patent, '912 patent, '435 patent, '946 patent |
| "active layer" | '653 patent, '496 patent, '410 patent, '069 patent | '800 patent, '157 patent, '912 patent |

---

[4] Of course, the three Asserted Patents common to this case and the *Feit Electric* Action share the exact same claim language. Those patents are not presented in this table.

| "semiconductor layer" | '653 patent, '225 patent, | '157 patent, '912 patent, '435 patent |
| "n-type semiconductor layer" | '496 patent, 868 patent | '800 patent |
| "p-type semiconductor layer" | '496 patent, '868 patent | '800 patent |

In view of the overlapping claim language, claim construction in the *Feit Electric* Action and this case may be duplicative even with respect to the Asserted Patents that Plaintiffs did not assert in the *Feit Electric* Action.

**Third**, the Asserted Patents that Plaintiffs **did not** assert in the *Feit Electric* Action share common inventors and prosecution counsel with the patents that Plaintiffs **did** assert in the *Feit Electric* Action. At least the following inventors are common to patents asserted in the *Feit Electric* Action and here:

| Inventor | Asserted Patent (This case) | Asserted Patent (*Feit Electric* Action) |
|---|---|---|
| Yeo Jin Yoon | '653 patent | '314 patent, '435 patent |
| Jae Ho Lee | '653 patent | '435 patent, '946 patent |
| Chung Hoon Lee | '225 patent | '225 patent, '157 patent, '684 patent, '956 patent |
| Dae Won Kim | '225 patent | '225 patent, '435 patent |
| Ki Bum Nam | '225 patent, '210 patent | '225 patent, '210 patent |
| Kyung Hae Kim | '210 patent | '210 patent, '800 patent |
| Eun Jung SEO | '050 patent, '967 patent, 821 patent | '967 patent |
| Jae Ho Cho | '967 patent, '821 patent | '967 patent |
| Bang Hyun Kim | '967 patent, '821 patent | '967 patent |

Many of these parties are in Korea making discovery costly and disruptive. Staying the matter may allow Ace Hardware to rely on the discovery from the *Feit Electric* Action and limit the need to depose at least some of these witnesses again.

10

Furthermore, at least the following prosecution counsel are common to patents asserted in the *Feit Electric* Action and here:

| Prosecution Counsel | Asserted Patent (This case) | Asserted Patent (*Feit Electric* Action) |
|---|---|---|
| H.C. Park & Associates, PLC | '653 patent, '225 patent, '050 patent. '967 patent, '821 patent | '225 patent, ''967 patent, '157 patent, '684 patent, '789 patent, '933 patent, '435 patent, '946 patent |
| Perkins Coie LLP | '210 patent | '210 patent, '800 patent, '314 patent, '912 patent |

Given the common inventors and prosecution counsel between the Asserted Patents and the patents asserted in the *Feit Electric* Action, staying this case will avoid duplicative fact discovery relating to the inventors and prosecution counsel.

**Fourth**, as alluded to above, the accused products in this case that Plaintiffs **did not** accuse of infringement in the *Feit Electric* Action likely share common LED semiconductors with the products that Plaintiffs **did** accuse of infringement in the *Feit Electric* Action. Infringement of the Asserted Patents and the patents asserted both in this case and in the *Feit Electric* Action turn on the specific structure of the LED *semiconductors* in the accused products; the rest of the light bulb structure is irrelevant. Thus, to the extent that two *different* accused products share the *same* LED semiconductors, the infringement analysis will be the same. Plaintiffs—like Nichia, Samsung, and Bridgelux—manufacture LED chips and packages. Factories then purchase these packages in bulk and assemble them into products that bulb suppliers like Feit Electric purchase. Feit Electric then sells the finished LED lightbulbs to retailers like Ace Hardware. The likely significant overlap of LED chips and packages between

11

the accused products in both cases further favors a stay because dozens, if not hundreds, of these products likely utilize the same LED semiconductors.[5]

In sum, the resolution of the *Feit Electric* Action is likely to substantially narrow the scope of this case and streamline it for trial. This factor overwhelmingly favors a stay.

**B.     A Stay Pending Resolution Of At Least The *Feit Electric* Action Will Reduce The Burden Of Litigation.**

The purpose of staying a customer suit is "to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute," while the customer is simply a downstream retailer or end user of the allegedly infringing product. *In re Nintendo of Am., Inc.*, 756 F.3d at 1365. That the *Feit Electric* Court's determinations will likely reduce the burden of litigation on both parties is exactly why the customer-suit exception to the first-to-file rule exists. Application of the customer-suit exception is "most apt" when the manufacturer and customer suits have overlapping patents, products, and subject matter. *See Mantissa Corp. v. Old Second Bancorp, Inc.,* 2018 WL 3059604, at *5 (N.D. Ill. June 20, 2018) (reasoning that the "manufacturer's liability will necessarily turn on whether the accused product satisfies every limitation of those claims, and resolution of that issue in the manufacturer's suit will also resolve whether the customer infringes."); *see also Sillage LLC v. Kenrose Perfumes Inc.*, 2015 WL 3649605, at *6 n.5 (C.D. Cal. June 9, 2015); *Joao Bock Transaction Systems, LLC v. First Nat. Bank*, 2013 WL 4840240, *2 (N.D. Ill. Sept. 10, 2013) (granting motion to stay infringement action under the customer-suit exception, so that a later filed suit against the manufacturer could proceed to conclusion).

---

[5] Specifically, many of the accused instrumentalities in both this case and the *Feit Electric* Action utilize LED semiconductors manufactured by Bridgelux and Samsung.

As demonstrated above, the patents, products, and LED semiconductors overlap between this case and the *Feit Electric* Action, such that the customer-suit exception should apply. Plus, Ace Hardware is a pure retailer and wholesaler. Ace Hardware does not manufacture any LED bulbs. As such, Ace Hardware is not in a position to know if the bulbs it sells contain allegedly infringing LED chips and packages or how the allegedly infringing LED chips and packages function. Thus, the parties here will need substantial third-party discovery relating to the accused products, including from Feit Electric. Permitting this case to proceed against Feit Electric's customer simultaneously as Plaintiffs' case against Feit Electric itself proceeds amounts to a waste of precious judicial resources and litigants' time and money. Simply put, Feit Electric, not Ace Hardware, is in the best position to litigate against Plaintiff's claims of patent infringement. The customer-suit exception confirms what the stay factors already reveal: The Court should stay this case pending the outcome of the *Feit Electric* Action.

**C.    A Stay Does Not Create A Tactical Advantage for Either Party, And No Party Will Be Unduly Prejudiced By The Requested Stay.**

A stay would neither prejudice Plaintiffs nor provide a tactical advantage to Ace Hardware. Courts evaluate this factor by considering (1) "the timing of the stay request," (2) "the status of review proceedings," and (3) "the relationship between the parties." *Trading Techs. Int'l, Inc. v. BCG Partners, Inc*., 2015 WL 1396632, at *5 (N.D. Ill. March 25, 2015). With respect to factor (3), the absence of direct competition between the parties favors a stay. *See T-Rex Prop. AB*, 2017 WL 372311 at *4; *CANVS Corp. v. United States*, 118 Fed. Cl. 587, 596 (2014).

**1.    Each of the Prejudice Subfactors Favors A Stay.**

First, Ace Hardware promptly filed its Motion to Stay a week after filing its Answer. (*See* Dkt. 70.) Second, there are no review proceedings pending with respect to the patents-in-

suit. And third, Plaintiffs and Ace Hardware are not competitors. Plaintiffs are LED semiconductor manufacturers. (*See* Dkt. 1 at 1.) Ace Hardware is a wholesaler and retailer of hardware and related products. They do not compete. Accordingly, a stay would neither prejudice Plaintiffs nor provide a tactical advantage to Ace Hardware.

### 2. Additional Factors Support A Stay.

The early stage of this litigation also suggests that Plaintiffs will not suffer prejudice if the Court grants a stay. "Staying a case at an early juncture can be said to advance judicial efficiency and maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *See T-Rex Prop. AB v. Adaptive Micro Sys., LLC*, 2017 WL 372311, *3, 2017 (N.D. Ill. Jan. 26, 2017) (citing *Trading Techs. Int'l*, 2015 WL 1396632 at *4) (citations omitted); *see id.* (finding early stages of litigation favors a stay because "no depositions have been taken or noticed, initial disclosures were recently issued, final contentions are not due for four more months, and no trial date has been set."); *VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1316 (Fed. Cir. 2014) (finding the "timing factor heavily favors a stay" because discovery had not yet begun, no trial date had been set, claim construction statements had yet to be filed, and jury selection was a year away).

### a. This Case Has Barely Progressed Against Ace Hardware.

This case has not meaningfully progressed. After the Eastern District of Virginia transferred this case to the Northern District of Illinois, (*see* Dkt. 46) the parties' have filed a Rule 26(f) Report, (*see* Dkt. 68) and Ace Hardware has filed an Answer to Plaintiffs' Complaint. (*See* Dkt. 70.) The parties will exchange initial disclosures on August 16, 2023. (*See* Dkt. 7.) To date, the parties have not engaged in any fact or expert discovery. Claim construction proceedings have not yet begun. The Court has not set a trial date.

**b. The *Feit Electric* Action Has Substantially Progressed.**

Plaintiffs sued Feit Electric on July 22, 2022, in the C.D. Cal., alleging infringement of nine patents: U.S. Pat. Nos. 9,799,800 ("the '800 patent"), 9,929,314 ("the '314 patent"), 10,217,912 ("the '912 patent"), 10,916,684 ("the '684 patent"), 7,906,789 ("the '789 patent"), 10,510,933 ("the '933 patent"), 9,627,435 ("the '435 patent"), and 8,716,946 ("the '946 patent"). (*See Feit Electric* Action, Dkt. 1.) Following some early motion practice and pleading amendments, the court entered a Scheduling Order on February 2, 2023. (*See id.* at Dkts. 23 (motion to dismiss), 45 (grant of motion to dismiss), 49 (first amended complaint).)

Patent discovery is in full swing in the *Feit Electric* Action. On April 20, 2023, Plaintiffs served their Preliminary Infringement Contentions ("PICs"), identifying 155 Feit Electric Products in 214 claim charts. (*See Feit Electric* Action, Dkt. 80 at 3.) Plaintiffs also listed 451 "Additional Accused Instrumentalities" without any accompanying claim charts or infringement analysis. (*See id.* at 4.) In response, Feit Electric filed a Motion to Strike Plaintiffs' Infringement Contentions on May 19, 2023. (*Id.*) On July 18, 2023, the court granted in part Feit Electric's motion to strike Plaintiffs' infringement contentions and found that plaintiffs' representative charting was insufficient. (*See id.* at Dkt. 90.) The court also ordered the parties to meet and confer to narrow the scope of asserted claims and accused instrumentalities, and Plaintiffs were ordered to file amended infringement contentions. (*Id.*) The parties are scheduled to exchange terms for claim construction on September 25, 2023. (*See id.* at Dkt. 45.)

The disparity between the limited progression of this case and the much-further-along *Feit Electric* Action favors a stay.

**V. CONCLUSION**

For the foregoing reasons, Ace Hardware requests that the Court enter an order staying the case until the resolution of the *Feit Electric* Action.

Dated: August 16, 2023           /s/ *Eric Maiers*

Eric J. Maiers
Matthew J. Levinstein
Olivia C. Mathews
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel: (312) 456-8400
maierse@gtlaw.com
levinsteinm@gtlaw.com
olivia.mathews@gtlaw.com

Kal K. Shah
Theresa L. Starck
**BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP**
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637 Tel: (312)
212.4949
kshah@beneschlaw.com
tstarck@beneschlaw.com

*Attorneys for Defendant Ace Hardware
Corporation.*

16

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 16th day of August 2023, caused true and correct copies

of the foregoing Motion to Stay Litigation and Supporting Brief to be served by CM/ECF, which

automatically serves a copy of the document on all counsel of record.

*s/ Eric Maiers*