**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| Seoul Semiconductor Co., Ltd., *a Korean Corporation*, and Seoul Viosys Co., Ltd., *a Korean Corporation*, | ) ) ) ) | Civil Action No. 1:23-cv-02690 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Ace Hardware Corporation, | ) ) | |
| Defendant, | ) | |

**PLAINTIFFS SEOUL SEMICONDUCTOR CO., LTD. AND**
**SEOUL VIOSYS CO., LTD.'S OPPOSITION TO MOTION TO STAY**

## TABLE OF CONTENTS

I.         INTRODUCTION ................................................................................................ 1

II.       BACKGROUND .................................................................................................. 3

III.     LEGAL STANDARDS ........................................................................................ 5

IV.    ARGUMENT ........................................................................................................ 6

       A.   The Customer Suit Exception Does Not Apply ....................................... 6

       B.   The Factors Considered Under the Customer Suit Exception Do Not Favor

           a Stay Here ................................................................................................ 8

       C.   The Factors Considered in the Standard Test for Staying a Case Also Do

           Not Support A Stay Here ...................................................................... 12

       D.   Seoul Would Suffer Substantial Prejudice from a Stay ........................ 13

V.       CONCLUSION .................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Beck Sys. v. Marimba, Inc*.,
   No. 01 C 5207, 2001 U.S. Distr. LEXIS 19023 (N.D. Ill. 2001) ............................................8

*Card Activation Techs. v. Pier 1*,
   2009 U.S. Dist. LEXIS 83107 (N.D. Ill. 2009) ............................................................8, 9, 14

*Cherdak v. Stride Rite Corp.*,
   396 F.Supp.2d 602 (D. Md. 2005) ........................................................................................11

*Clinton v. Jones*,
   520 U.S. 681 (1997)................................................................................................................5

*Futurewei Techs., Inc. v. Acacia Rsch Corp.*,
   737 F.3d 704 (Fed. Cir. 2013).................................................................................................6

*Kahn v. General Motors Corp*.,
   889 F.2d 1078 (Fed. Cir. 1989)..................................................................................... *passim*

*Katz v. Lear Siegler, Inc*.,
   909 F.2d 1459 (Fed.Cir.1990)......................................................................................6, 8, 14

*Mantissa Corp. v. First Fin. Corp*.,
   No. 17 C 9174, 2018 U.S. Dist. LEXIS 241235 (N.D. Ill. 2018)......................................8, 13

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012)..........................................................................................6, 7

*Mitutoyo Corp. v. Cent. Purchasing, Inc*.,
   No.03 C 0990, 2003 U.S. Dist. LEXIS 7931 (N.D. Ill. 2003)............................................9, 13

*Motorola Solutions, Inc. v. Hytera Commns. Corp. Ltd.*,
   402 F.Supp.3d 450 (N.D. Ill. 2019) .......................................................................................7

*In re Nintendo*,
   756 F.3d 1363 (Fed. Cir. 2014).........................................................................................6, 7

*Otter Products, LLC v. Flygrip, Inc.*,
   No. 21-cv-03298-NYW-KLM, 2022 WL 3443688 (D. Colo. Aug. 17, 2022)......................11

*Pfizer, Inc. v. Apotex, Inc*.,
   640 F. Supp. 2d 1006 (N.D. Ill. 2009) .............................................................................6, 12

*Seoul Semiconductor Co., Ltd. et al. v. Ace Hardware Corporation*,
   No. 1:21-cv-00912 (W.D. Tex. Oct. 12, 2021).........................................................................1

*Seoul Semiconductor Co., Ltd. et al. v. Feit Electric Co., Inc.*,
　　No. 2:22-cv-05097-AB-SHK (C.D. Cal.) ................................................................2

*Static Control Components v. Future Graphics, LLC*,
　　No. 1:08CV109, 2009 WL 10680193 (M.D. N.C. Jan. 28, 2009)................................9, 10, 11

*Tegic Commc'n Corp. v. Board of Regents of the Univ. of Texas Sys.*,
　　458 F.3d 1335 (Fed. Cir. 2006)................................................................................10

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
　　46 F.3d 624 (7th Cir. 1995) .....................................................................................5

## I.     INTRODUCTION

Defendant Ace Hardware Cooperation ("Ace") touts itself as the "world's largest retailer-owned hardware cooperative" with over 5,000 stores around the world.[1]  Among other products, Ace sells LED (light emitting diode) light bulbs and other products incorporating LED components.  It is these LED-based products that are accused of infringement in this case.

As the world's largest hardware retail cooperative, the actions that Ace takes in the market influence others.  For example, which products Ace chooses to import and sell, such as the products accused in this case, directly affect which products are used, sold, and offered for sale in the United States.

Plaintiffs Seoul Semiconductor Co., Ltd. and Seoul Viosys Co., Ltd. (collectively "Seoul") have invested for many years in proprietary LED technology that they have patented. Realizing that Ace was selling products that infringe Seoul's patents, Seoul reached out to Ace numerous times and requested that it stop selling infringing products.  Beginning in April 2019, Seoul sent warning letter after warning letter to Ace, notifying it about its Seoul's patents and Ace's infringing products and asking that Ace respect Seoul's patent rights.  Dkt. 1 ¶¶ 25-37. Ace ignored most of Seoul's letters and refused to make any commitment to stop selling infringing products.  *Id.*

After numerous failed attempts to resolve matters amicably, Seoul brought suit against Ace for patent infringement in October 2021 in the Western District of Texas. (*Seoul Semiconductor Co., Ltd. et al. v. Ace Hardware Corporation,* No. 1:21-cv-00912 (W.D. Tex.

---

[1] *See Ace Hardware is Kicking Off Labor Day with a Free Cookout*
(https://newsroom.acehardware.com/omaha-steaks-grill-
promo/?_gl=1*1yip646*_ga*MTc2ODk3Mjc1Ny4xNjk0NjI5MDM1*_ga_CRGJ6H77X9*MTY5NDYy
OTAzNy4xLjEuMTY5NDYyOTEzMi40NS4wLjA.) and *About Ace Hardware Corporation - The
Largest Retailer-Owned Hardware Store - Ace Hardware* (https://www.acehardware.com/about-us) (last
visited 9/12/2023).

Oct. 12, 2021). Ace sought to dismiss based upon venue, whereupon Seoul voluntarily dismissed its complaint. (*See* Dkt. 29 in Case No. 1:21-cv-00912 (W.D. Tex.)) Subsequently, Seoul filed this suit in April 2022 in the Eastern District of Virginia, where Ace has physical locations, including a Redistribution Center that Ace describes as "the organization's east coast hub for receiving import merchandise through the Port of Virginia." Dkt. 1 ¶ 7.[2] In July 2022, Ace filed a motion to dismiss or transfer venue (Dkt. 13), and, months later in March 2023, this case was transferred to Illinois. (Dkt. 45)

Despite the prejudice to Seoul from Ace continuing to sell infringing products, upon transfer to this Court, Ace filed a motion to stay premised on the "customer suit" exception and the overlap between the patents asserted in this case and those asserted by Seoul against one of Ace's lighting suppliers, Feit Electric Company ("Feit"). (*Seoul Semiconductor Co., Ltd. et al. v. Feit Electric Co., Inc.,* No. 2:22-cv-05097-AB-SHK (C.D. Cal.)) ("the Feit Litigation").

The customer suit exception does not apply in this case. Regardless, the overlap between the cases, which is small, will not lead to significant efficiencies should this case be stayed. More specifically, a stay is inappropriate because: (1) most of the patents between the two cases do not overlap; (2) there is no overlap in accused products on a patent-by-patent basis; and (3) this case involves products from suppliers other than Feit. Therefore, the Feit Litigation would not resolve all or even a significant number of the issues in this case. For example, the Feit Litigation will not resolve whether any product sold by Ace infringes any patent it is accused of infringing in this case. Put simply, the Feit Litigation does not share any issue of infringement with this case. Ace points to other litigation in its brief, without disclosing that virtually every other litigation on the patents asserted here has settled because other retailers, unlike Ace, have taken

---

[2] Ace is headquartered in Illinois, but at the time of the filing of the Complaint, Ace was <u>not</u> in good standing in the State of Illinois. Dkt. 1 ¶ 6.

responsibility for complying with patent laws.  The only case on which Ace relies for its

customer suit exception – the Feit Litigation – will not result in any significant judicial efficiency

because of the minimal overlap, while a stay would greatly prejudice Seoul in continuing to

delay the outcome while Ace continues selling products that infringe Seoul's patents.

## II.    BACKGROUND

This case involves ten asserted patents which have been referred to in their shorthand

form as the '653 Patent, the '225 Patent, the '868 Patent, the '496 Patent, the '050 Patent, the

'821 Patent, the '410 Patent, the '210 Patent, the '967 Patent, and the '069 Patent (collectively,

"the Asserted Patents"). In the Complaint, for each of the Asserted Patents, Seoul alleged that

Ace infringed an exemplary claim of that Asserted Patent by offering for sale, selling, using

and/or importing products within or into the United States.  *See, e.g.,* Dkt. 1 ¶ 39.  The

allegations for each Asserted Patent included an "exemplary" claim and an exemplary product to

make it clear that Seoul intended to include additional accused products and/or asserted claims in

its infringement contentions.

The Complaint in this action identifies three exemplary products: (1) the Ace

A4508501KLED4/ACE (*see* Dkt. 1 ¶40); (2) the Feit BPST19/LED(K) (*see* Dkt. 1 ¶48); and (3)

the Globe 91497 (*see* Dkt. 1 ¶54). As such, from the very beginning, this case has been broader

than Feit-supplied products.

The Feit Litigation involves only three of the Asserted Patents, namely the '225 Patent,

the '210 Patent, and the '967 Patent (collectively "the Overlapping Patents"). As set forth in

exemplary form in the Complaint, the infringement allegations at that time were as follows (an X

indicating that the exemplary product was accused of infringing the corresponding patent and the

Overlapping Patents bolded):

3

| PATENT | ACE PRODUCT | FEIT PRODUCT | GLOBE PRODUCT |
|---|---|---|---|
| '653 Patent | X | | |
| **'225 Patent** | | **X** | |
| '868 Patent | | | X |
| '496 Patent | | X | |
| '050 Patent | | | X |
| '821 Patent | X | | |
| '410 Patent | | | X |
| **'210 Patent** | | | **X** |
| **'967 Patent** | **X** | | |
| '069 Patent | X | | |

In the Feit Litigation, neither Ace products nor Globe products are accused of infringing any asserted patent. Kudlac Decl. ¶ 5.[3] Thus, as of the time of the Complaint, there was only a single ***possible*** point of overlap with respect to infringing products, and that was the Feit Product named in the Complaint and its infringement of the '225 Patent. However, the Feit Product named in the Complaint in this action is **not** accused of infringing the '225 Patent in the Feit Litigation. Ex. 1.[4]

Recently – on September 12, 2023 – Seoul served its Initial Infringement Contentions in this Action. Ex. 2. Those contentions reveal that the overlap with the Feit case with respect to infringement has remained the same – none.[5]

In particular, with respect to the Overlapping Patents, Seoul's Initial Infringement Contentions identified **no** Feit products other than the original Feit product named in the

---

[3] References to "Kudlac Decl." are to the Declaration of Kevin S. Kudlac in Support of Plaintiffs' Opposition to Defendant's Motion to Stay.

[4] References to Exs.1-3 are to documents attached to the Declaration of Kevin S. Kudlac in Support of Plaintiffs' Opposition to Defendant's Motion to Stay.

[5] Ace wrongly accuses Plaintiffs of "keeping Ace Hardware and this Court in the dark of the significant overlap" by designating its infringement contention claim charts in the Feit Litigation as Confidential and, due to the Protective Order, refusing to allow Ace Hardware – a non-party to the Feit Litigation – to see them. However, all of the products accused of infringement of the Overlapping Patents in the Feit Litigation are identified in the cover pleading of Seoul's Infringement Contentions in the Feit Litigation. Ex. 1; Kudlac Decl. ¶¶4-5.

Complaint, which is **not** at issue in the Feit Litigation. *See* Ex. 2 at 11 (excerpt reproduced below).

| 9,716,210 | 1, 3-4, 9, and 21 | Globe 91497<br>Globe 34920 | Exhibit H-1 through H-2 | 01/05/2010 |
|---|---|---|---|---|
| 7,667,225 | 1, 4-6, 10-11, 16-18 and 19 | FEIT BPST19/LED(K)<br>Globe 34920<br>Gemmy 227749<br>Nebo 6564 | Exhibit I-1 through I-4 | 03/06/2009 |
| 10,134,967 | 17 and 20 | ACE A45085010KLED4/ACE<br>Westinghouse 61122 | Exhibit J-1 through J-2 | 11/18/2008 |

Importantly, Seoul's Initial Infringement Contentions identified products from **four** additional suppliers to Ace: Gemmy, Nebo, and Westinghouse[6] none of which are accused in the Feit Litigation. Kudlac Decl. ¶ 5.

## III. LEGAL STANDARDS

While the Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995), "[t]he proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708.

This case was filed before the Feit Litigation and, as such, is the first filed suit. The general rule is that, absent special circumstances, "the first suit should have priority." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). The customer suit exception is an exception to the general rule that favors the first-filed action. *Id.* . The customer suit exception applies "[w]hen a patent owner files an infringement suit against a manufacturer's customer and

---

[6] In its Motion Ace states that "Counsel for Plaintiffs advised Ace Hardware on the eve of the Ace Hardware's deadline to file this motion that it did not anticipate accusing any additional Feit Electric branded products or products sold by Feit Electric to Ace Hardware in its infringement contentions in this case." Dkt. 75 at 8, n.2. To the extent Plaintiffs' counsel's statement was understood to mean no additional Feit products would be accused for **any** Asserted Patent, Ace's counsel was mistaken. As can be seen from the cover pleading of Seoul's Initial Infringement Contentions, numerous additional Feit products sold by Ace have been accused of infringement but **not** with respect to any of the Overlapping Patents.

the manufacturer then files an [declaratory judgment] action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence." *In re Nintendo,* 756 F.3d 1363, 1365 (Fed. Cir. 2014) *citing Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F.3d 1349, 1357 (Fed.Cir.2011); *Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1464 (Fed.Cir.1990).

Moreover, the first- to-file rule, however, "is not rigidly or mechanically applied—an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts." *Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1299 (Fed. Cir. 2012). Exceptions may be made if justified by "considerations of judicial and litigant economy, and the just and effective disposition of disputes." *Futurewei Techs., Inc. v. Acacia Rsch Corp.,* 737 F.3d 704, 708 (Fed. Cir. 2013). As detailed below, the prejudice, delay, and added expense to Seoul that would occur should this Court stay this action, are "considerations of judicial and litigant economy" that justify denying Ace's motion.

Courts generally consider three factors in deciding whether to stay an action: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (ii) whether a stay will simplify the issues and streamline the trial; and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer, Inc. v. Apotex, Inc*., 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009).

## IV.   ARGUMENT

### A.   The Customer Suit Exception Does Not Apply

This is not a case even amenable to analysis under the customer suit exception, let alone subject to a stay because of it. As noted above, the customer suit exception is an exception to the first to file rule. *Kahn,* 889 F.2d at 1081. The first to file rule provides that when two *essentially identical suits* are filed—absent special circumstances—priority is given to the suit that is filed

first in time. *See e.g., Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) ("The 'first-to-file' rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions.") The second suit is typically either stayed, dismissed or transferred in favor of the first suit. *Id.*[7]  The customer suit exception is a name for one of those special circumstances where a *later-filed suit* (against a manufacturer of a product) could go forward ahead of an earlier filed suit (against a retailer of that same product).  *In re Nintendo,* 756 F.3d at 1365.  Importantly, the subject matter of those suits—i.e., the actual legal causes of action asserted—must be essentially the same in both cases. This typically applies, for example, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an [declaratory judgment] action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence." *Id*.

In the circumstances here, the purported manufacturer, Feit, has **not** filed a declaratory judgment action for non-infringement of any of the Asserted Patents, has not filed a declaratory judgment action seeking invalidity of the Asserted Patents, and in the Feit Litigation, Feit has not brought counterclaims of invalidity or noninfringement with respect to any of the Asserted Patents (including, of course, the Overlapping Patents). Indeed, there is not a single cause of action—i.e., assertion of a particular patent against a particular product[8]—in common between

---

[7] A typical example of the application of the first to file rule occurs when parties have a dispute and have been unsuccessful in pre-suit negotiations to resolve the dispute.  Once the impasse occurs there can be a race to the courthouse.  All things being equal, the first filed suit takes priority.  *See e.g., Merial Ltd.,*  681 F.3d at 1299.

[8] A single product may infringe several or even many patents.  Each act of infringement is an independent tort giving rise to a separate cause of action.  *See e.g., Motorola Solutions, Inc. v. Hytera Commns. Corp. Ltd.,* 402 F.Supp.3d 450, 456 (N.D. Ill. 2019).

the instant case and any other case pending in any case. As such, the customer suit exception simply does not apply here.

**B.    The Factors Considered Under the Customer Suit Exception Do Not Favor a Stay Here**

Although the exception does not apply here, even if the Court considers the customer suit exception factors, Ace's Motion should be denied. The "primary question" for a stay under the customer suit doctrine "is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *Katz v. Lear Siegler, Inc.,* 909 F. 2d 1459, 1463 (Fed. Cir. 1990). In general, courts have declined to apply the customer-suit exception when the manufacturer suit cannot resolve all of the issues in the customer suit. *See Kahn*, 889 F.2d at 1081-82. *Beck Sys. v. Marimba, Inc*., No. 01 C 5207, 2001 U.S. Distr. LEXIS 19023, *6 (N.D. Ill. 2001). In *Kahn*, the Federal Circuit refused to apply the customer suit exception where the manufacturer suit would not resolve all infringement issues and where the customer had not agreed to be bound by the manufacturer's action such that the remedy would still have to be litigated against the customer. *Id*. at 1082. As explained above, the Feit Litigation will not resolve **any** of the infringement issues in this case as there is no overlap of Asserted Patent against accused product. This Court has addressed similar situations and held that "All in all, a stay is appropriate when the litigation against the manufacturer alone will resolve the 'major issues' concerning the claims against the customer." *Mantissa Corp. v. First Fin. Corp*., No. 17 C 9174, 2018 U.S. Dist. LEXIS 241235, *7, 10 (N.D. Ill. 2018) (rejecting application of the customer suit exception where the other action would not be expected to "fully resolve issues of infringement or damages").

At the heart of the inquiry is the Court's need to assess whether judicial resources will be saved by staying a customer suit until a manufacturer suit has run its course. *Card Activation*

*Techs. v. Pier 1*, 2009 U.S. Dist. LEXIS 83107, *7 (N.D. Ill. 2009) ("The guiding principles in the customer suit exception cases are efficiency and judicial economy.") (citations omitted). In considering whether the exception should apply, the Court considers three factors: "(1) whether the customer defendant in the earlier-filed case is merely a reseller; (2) whether the customer-defendant agrees to be bound by any decision in favor of the patent owner; and (3) whether the manufacturer is the only source of the infringing product". *Id.* (citing *Kahn*, 889 F.2d at 1082). *See also Mitutoyo Corp. v. Cent. Purchasing, Inc*., No.03 C 0990, 2003 U.S. Dist. LEXIS 7931, *6 (N.D. Ill. 2003) (denying motion for stay).

Here, there is little judicial efficiency or economy obtained from granting a stay, because none of the three factors are met. With respect to the first factor, Ace is not merely a reseller of Feit products. As detailed above, Ace sells accused products from Globe, Nebo, Gemmy, and Westinghouse as well as its own branded products. Therefore, this case does not involve a situation where Ace is merely a reseller of Feit products, and this factor favors denial of Ace's motion.

The primary rationale behind the customer suit exception is that the manufacturer of an allegedly infringing device is the real party in interest in a lawsuit against a mere customer and has a presumed greater interest in defending its actions against charges of patent infringement.[9] *See Kahn,* 889 F.2d at 1081. However, where a patentee has a special interest in proceeding against the customer rather than the manufacturer, the 'real party in interest' rationale for giving priority to the manufacturer's lawsuit is inapplicable. *Static Control Components v. Future Graphics, LLC,* No. 1:08CV109, 2009 WL 10680193 at * 2, (M.D. N.C. Jan. 28, 2009) *citing*

---

[9] It once again bears mention that this question of "the real party in interest" is incoherent in this case because the "interests" are different in each cases irrespective of the identity of the defendant since there are different causes of action asserted in the two cases.

*A.P.T., Inc. v. Quad Envtl. Techs. Corp., Inc.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988). Indeed, the *Static Control* case is directly analogous to the situation here:

> Preventing the manufacture of the allegedly infringing chips would require multiple lawsuits and enforcement of judgments in multiple countries. Plaintiffs, as patentees, have the right to choose legal action they feel will most effectively and expeditiously prevent infringement of their patents. Because the Plaintiffs wish to pursue customers of foreign manufacturers in order to deter other U.S.-based companies from purchasing allegedly infringing chips, rather than take on the risks inherent in pursuing claims against multiple foreign manufacturers in multiple foreign countries, the "real party in interest" rationale for the customer suit doctrine is overcome.

*Static Control,* 2009 WL 10680193 at * 2

The second factor also weighs strongly against granting a stay. Ace has not agreed to be bound by the results of the Feit Litigation, including liability for damages. Therefore, this element of judicial efficiency is not met, rendering a stay inappropriate. *Tegic Commc'n Corp. v. Board of Regents of the Univ. of Texas Sys.,* 458 F.3d 1335, 1343 (Fed. Cir. 2006). Indeed, there are few, if any "results" of the Feit Litigation to which Ace could agree to be bound. The Feit Litigation will not determine infringement of any Asserted Patent with respect to any product accused in this case of infringing that patent – there is no overlap of infringement allegations. Ace has not agreed to be bound by a finding of "no invalidity" with respect to the Overlapping Patents. Nor has Ace agreed to any finding, should there be one, of a reasonable royalty for the Overlapping Patents.[10]

The third factor also favors denial of a stay. This factor looks at whether the manufacturer, Feit in this case, is the only source of infringing products. As detailed above, Feit is not the only supplier of infringing goods to Ace. Ace sells accused products from Globe, Nebo, Gemmy, and Westinghouse as well as its own branded products. In situations where there

---

[10] Even if Ace were to agree to these aspects of overlap, they still pale in comparison to the scope of issues that do not overlap, including the complete absence of overlap with respect to infringement.

are multiple other manufacturers of accused products, this factor weighs against a finding that the customer suit exception applies. *See e.g., Otter Products, LLC v. Flygrip, Inc.,* No. 21-cv-03298-NYW-KLM, 2022 WL 3443688 at \*16, (D. Colo. Aug. 17, 2022) ("In the present case, because there are four additional manufacturers involved in the Amazon and Walmart Suits, Plaintiff's declaratory judgment action is incapable of resolving the 'major issues' in dispute. Defendant's infringement allegations against the other four manufacturers will remain as 'major issues' even if allegations made against Plaintiff's products are resolved."). Because Feit is not the only source of infringing products, and major issues with respect to the other suppliers' products will remain, this factor also strongly favors denial of Ace's motion.

Moreover, one reason for analyzing if the "manufacturer" is the only source of infringing products is because, presumably, the manufacturer will have more information on the technical details of the manufacture, structure, function, and operation of the accused devices. *See e.g., Cherdak v. Stride Rite Corp.,* 396 F.Supp.2d 602, 604 (D. Md. 2005) (denying Defendant's Motion to Stay based on customer suit exception alleging third-party BBC "has the most knowledge about the allegedly infringing products" because, in part, the "actual manufacturers of the shoes are Chinese companies that [Defendant] contends are effectively immune to suit."). *See also Static Control,* 2009 WL 10680193 at \* 2 ("Judicial economy is often best served by allowing the second-filed suit to proceed because the manufacturer is in a better position to defend against a claim of infringement or to assert invalidity of the patentee's claim because of its detailed knowledge regarding the infringing product and greater expertise in the area.")

In similar fashion to the *Cherdak* case, it is unlikely that Feit will have greater knowledge than Ace because even Feit has disclaimed possessing detailed knowledge of the LEDs of their

11

own products stating, in opposition to Seoul's Motion to Compel Interrogatory Answers: "Feit Electric has only very general and broad knowledge about LED chips and knows nothing about the details of LED chips of the manufacture of LED chips or LED packages." Ex. 3 at 48. As such, the underpinnings of the customer suit exception do not exist here.

### C. The Factors Considered in the Standard Test for Staying a Case Also Do Not Support A Stay Here

None of the other factors – prejudice or tactical advantage, simplification, reduced burden – for a discretionary stay support Ace's motion. *See Pfizer,* 640 F. Supp. 2d at 1007.

A stay will not simplify the issues and streamline the trial or reduce the burden of litigation on the parties and the court, because the Feit Litigation will not be dispositive of this case. Of the ten patents at issue in this case, only three patents overlap with the Feit Litigation. As an initial matter, the infringement and invalidity issues will be different for the seven patents that are not involved in the Feit Litigation. Moreover, not a single infringement issue for the Overlapping Patents will carry over from the Feit Litigation. Because of this minimal overlap there will not be any significant simplification of issues or streamlining of trial.

Because the Feit Litigation cannot resolve all the issues relating to the Overlapping Patents, Ace and Seoul will have to litigate issues relating to these three patents – as well as the other seven patents not at issue in the Feit case. If a stay is granted, the parties will have to resume litigation after the Feit case is concluded, well behind the current schedule, thus further delaying Seoul's ability to stop Ace's infringement. The Court would still have to engage in claim construction, as more than two thirds of the patents-in-suit in this case will not have been construed. The parties would have to engage experts, including potential new experts for the seven patents that do not overlap. And the Court would still have to weigh prior art and any other defenses that may exist with the non-Overlapping Patents. Thus, rather than increase

12

efficiency, a stay would result in wasted time and resources. This is precisely the situation in which courts have found a stay not to be efficient or warranted. *Mantissa Corp.*, 2018 U.S. Dist. LEXIS 241235, *7, 10 (denying a motion to stay where the manufacturer litigation would not be fully dispositive of the customer suit, and a stay would not promote efficiency and prevent prejudice); *Kahn*, 889 F.2d at 1081-82; *Mitutoyo,* 2003 U.S. Dist. LEXIS 7931, *9 (denying motion to stay where it would not promote judicial economy but instead undue delay and prejudice).

This case also involves claims of willful infringement by Ace, who continued offering and selling infringing products despite numerous warning letters provided well in advance of this litigation being filed.  The Feit Litigation will not resolve the issue of Ace's willful conduct. Thus, this is yet another example in which the Feit Litigation will not be dispositive of the issues in this case or promote judicial efficiency.

> **D.    Seoul Would Suffer Substantial Prejudice from a Stay**

If the Court were to stay this action, Seoul would suffer substantial and undue prejudice. This case has been pending for almost two years.  The Feit Litigation is not set to go to trial until 2025, so awaiting the outcome of that case –where only three of the ten patents overlap – would result in tremendous prejudice and delay to Seoul's patent rights.  This is particularly so where Seoul's litigation followed numerous warning letters attempting to get Ace to stop selling infringing products.

Conspicuously absent in Ace's motion is any assertion that Ace would be bound by the outcome of the Feit Litigation. This is highly prejudicial to Seoul because, if the Feit case results in a determination that the Overlapping Patents not invalid, Ace will get a second bite at the apple via this case.  To avoid such inherent prejudice to a patentee, courts, including in the cases

cited by Ace, routinely require a representation that customers will be bound by the outcomes of the manufacturer suits. *See, e.g., Katz*, 909 F. 2d at 1463 (movant to intervene represented to the court "that resolution of the major issues before that court, including patent infringement, patent validity, and Mr. Katz' capacity to sue, will resolve these issues as to their customers."); *Card Activation Techs.,* 2009 U.S. Dist. LEXIS 83107, *12 (stay of customer suit appropriate "particularly where, as here, the customer agrees to be bound by the outcome of the [manufacturer case]."). Ace has provided no such representation here, let alone any declaration from Ace or its counsel to this effect.

Therefore, there is substantial prejudice and delay to Seoul, while no such prejudice to Ace, particularly where the customer-suit exception does not apply and there is little to no judicial efficiency promoted from granting a stay. "Although the balancing of conveniences is in the sound discretion of the district court, the balance is reached in light of the general rule favoring choice of forum, and the harm caused by delay in resolving stayed issues." *See Kahn*, 889 F.2d at 1082. "The party requesting a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Id.* at 1083 (Federal Circuit vacating district court's motion to stay). Ace cannot meet the burden of showing that a stay will promote judicial efficiency while minimizing prejudice to Seoul, and its motion must be denied.

## V.    CONCLUSION

For all of the foregoing reasons, Seoul requests that the Court deny Ace's motion for a stay.

Dated: September 14, 2023          Respectfully Submitted,

/s/ Kevin S. Kudlac

Kevin S. Kudlac (*pro hac vice*)
**RADULESCU LLP**
501 Congress Avenue, Ste. 150
Austin, TX 78701
512-656-5743
kevin@radip.com

David C. Radulescu, Ph.D. (*pro hac vice*)
Etai Lahav (*pro hac vice*)
Jonathan Auerbach (*pro hac vice*)
**RADULESCU LLP**
5 Penn Plaza, 19th Floor
New York, NY 10001
646-502-5950
david@radip.com
etai@radip.com
jonathan@radip.com

David Randolph Bennett
Steven G Kalberg
**Direction IP Law**
P.O. Box 14184
2620 N. Burling St.,
Chicago, IL 60614
(312) 291-1667
dbennett@directionip.com
skalberg@directionip.com

***Attorneys for Plaintiffs***
***Seoul Semiconductor Co., Ltd., and***
***Seoul Viosys Co., Ltd.***

15

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic filing on September 14, 2023.

/s/ *Kevin S. Kudlac*
Kevin S. Kudlac
