**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SEOUL SEMICONDUCTOR CO., LTD., a Korean corporation, SEOUL VIOSYS CO., LTD., a Korean corporation, | |
| Plaintiffs, | Civil Action No. 1:23-cv-02690 |
| v. | **JURY TRIAL DEMANDED** |
| ACE HARDWARE CORPORATION, | |
| Defendant. | |

**DEFENDANT ACE HARDWARE'S REPLY
<u>IN SUPPORT OF ITS MOTION TO STAY</u>**

## INTRODUCTION

Plaintiffs' primary opposition to Ace Hardware's requested stay is that the customer-suit exception should not be applied. Plaintiffs miss the forest for the trees. The exception does not turn on whether Plaintiffs have manipulated the overlapping cases to seemingly distinguish three of ten Patents-in-Suit. Rather, the exception applies where the real party in interest overlaps. On that score, Plaintiffs cannot credibly deny that Ace Hardware is not the real party of interest here. Ace Hardware is a retailer of thousands of products and Plaintiff's patents relate to a component – LEDs – within a mere fraction of Ace Hardware's offerings. Tellingly, Plaintiffs offer no mechanism or process by which a retailer such as Ace Hardware can mitigate its alleged exposure, and any such process rests with the suppliers of the LED products at issue. Those suppliers, of course, are the real parties of interest warranting exercise of the customer-suit doctrine.

As it relates to suppliers, Plaintiffs' recently-provided Initial Infringement Contentions leave no doubt that this litigation will very likely be an exercise in futility. Of the 219 accused products, 177 products – over 80% – are Feit Electric supplied products, all of which Plaintiffs allege are at issue in the concurrent matter of *Seoul Semiconductor Co., Ltd. et al v. Feit Electric Company, Inc.* 2-22-cv-05097 (C.D. Cal.) (the "*Feit Electric Litigation*").[1] Notably, Plaintiffs refuse to confirm that overlapping Feit Electric products will not be asserted here. Instead, Plaintiffs focus on irrelevant distinctions between the two litigations to avoid the customer-suit doctrine, but in doing so only underscore the extent to which these two matters overlap. Resolution of these sister cases will substantially impact the scope and nature of this case. For these reasons, the customer-suit exception applies, and a stay is appropriate.

---

[1] This is on top of two more active sister cases, one of which, *Seoul Semiconductor Co., Ltd. et al v. Finelite, Inc.,* 3-22-cv-02869 (N.D. Cal.) (the "*Finelite* case"), shares seven of the same patents-in-suit.

A stay is, in fact, appropriate even outside of the customer-suit exception. A stay based on resolution of these others matters will, if not render this case moot, simplify the issues in question and streamline the trial. As most of the patents and all of the relevant subject matter are currently being litigated in other matters, other rulings on issues such as claim construction, validity, and enforceability will be insightful here. A stay will further reduce the burden of litigation on the parties and on the Court and avoid inconsistent rulings since the foundation for the technical and legal issues is potentially guiding here. For instance, most of the accused products are already being dealt with in, at least, the *Feit Electric* case.[2] Finally, Plaintiffs would not be prejudiced by a stay because most of the patents at issue and nearly all the products at issue are already being addressed in the sister cases, Plaintiffs have numerous other matters pending, and Plaintiffs sought twice to avoid this Court rather than proceed expeditiously in the proper venue. Accordingly, it is in the interest of the Court and the parties to stay this case.

### ADDITIONAL RELEVANT BACKGROUND FACTS

On August 17, 2023, the Court set a briefing schedule for Defendant's Motion to Stay and stayed discovery pending the Court's ruling. Dkt. 76. On September 12, 2023, just two days before the Response was due, Plaintiffs nevertheless served Ace Hardware with their Initial Infringement Contentions listing 219 accused products for the ten Patents-in-Suit. Plaintiffs' allegations cover ten patents, 59 claims, 219 accused products, and span over 380 separate infringement charts. Notably, of the 219 accused products, 189 (93%) are Feit Electric products. Of these, 177 products (80% of the total accused products) are *also* accused Feit Electric products that Plaintiffs

---

[2] Plaintiffs do include products from other suppliers such as Globe, however, even then there is overlap in the relevant component – LEDs – as the component supplier for Globe and many Feit Electric products is the same. Importantly, Ace Hardware is not positioned to have any insight into the inner components or workings of the lighting products.

concurrently allege infringe the patents in the co-pending *Feit Electric* case.[3] *See* Dkt. 77 ("Response") at Exs. 2 and 3. And, of course, Plaintiffs have already conceded that the Patents-in-Suit have been at issue in dozens of cases, some of which are currently active. Dkt. 68 at 6-7.

## ARGUMENT

### I.    The Customer-Suit Exception Applies

Plaintiffs attempt to avoid the customer suit doctrine by cherry-picking three out of ten asserted patents, arguing those three (at least for now) are not asserted against Feit Electric products. But the customer-suit doctrine is driven by an analysis of the real party of interest, not artificial framing of contentions. *See Katz v. Lear Siegler*, Inc., 909 F.2d 1459, 1464 (Fed. Cir. 1990) (the "customer suit" doctrine dictates that litigation should proceed against the real party in interest, *i.e.*, the one best positioned to defend against the patent claims.). There is no dispute that Ace Hardware is simply a retail distributor of thousands of hardware products, of which lighting, specifically LED lighting, are a mere fraction. As Plaintiffs are well-aware, Ace Hardware does not manufacture its own LED chips, LED packages, or finished lighting products — the accused products. Even the ACE-branded product is not manufactured by Ace Hardware.[4] Ace Hardware is, by definition, a customer and precisely the type of defendant the customer-suit exception is meant to protect.

Plaintiffs make no claim, nor could they, that Ace Hardware has any insight or ability to review the LED lighting products it purchases and resells to identify or avoid infringing.

---

[3] Plaintiffs and Feit Electric continue to dispute the scope of products at issue. *See, Seoul Semiconductor Co., Ltd. et al v. Feit Electric Company, Inc.*, 2-22-cv-05097, Dkt. 90 (ordering SSC to narrow the scope of its infringement contentions) (C.D. Cal.). Moreover, Plaintiffs make no representation that they will not seek to add overlapping products in either case.

[4] Only one of the 219 accused products is an Ace-branded product. *See, generally,* Response at Ex. 3 (including only "ACE A45085010KLED4/ACE").

Moreover, any such mechanism necessary relates to the **supplier** of the accused products, in this case Feit Electric, for over half of the products at issue.[5] Under these circumstances, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." *Id.*

Plaintiffs' entire argument hinges on the fact that there are some differences between the *Feit Electric* case and this one, even going so far as to attach the contentions to their Response.[6] Response at Ex. 1. Plaintiffs' contentions, however, only support a stay. Plaintiffs tellingly do not represent to this Court that Feit Electric products in the *Feit Electric Litigation* will not be the subject of its contentions here. Further, there is an overwhelming overlap in the asserted products between the *Feit Electric* case and those asserted in the current case. *See* Reponses at Ex. 1 and Ex. 2. A list of the nearly 200 overlapping products is attached at Exhibit A. And, of course, there is no reason to believe that the scope will not change or that any resolution would not be universal.

As a matter of law, this Court need not find a one-to-one relationship to determine a stay is the proper course. Rather, "the manufacturer's case needs only have the potential to resolve the

---

[5] This dispute about which lighting products overlap with what patents and cases is, in many respects, a red herring. All ten of the patents in suit are directed to the technical inner workings of semiconductors that make up LED lighting products — LED chips and LED packages. The patents span a variety of areas of the field from methods of manufacturing diodes to semiconductor chip structure and composition, up through use of phosphor in the diodes, and so forth. Plaintiffs themselves are unable to determine whether a given internal chip or diode or semiconductor structure is infringing by looking at the specifications of the lighting product or the product itself. The accused aspects of the products cannot be seen by unaided eyes but, rather, require specialized equipment and techniques to deconstruct and to examine. Ace Hardware is in no position to conduct or even know how to conduct such unique experimentation. Plaintiffs' litigation strategy — to harry the retailers and distributors who know the least about the minuscule, microscopic, and atomic-level aspects of the inner workings of the lighting devices sold on shelves — is not in the interest of expediency or accuracy which is no doubt why it also sued Feit Electric and others concurrently. This matter is merely for leverage.

[6] Ace Hardware specifically requested the *Feit Electric Litigation* contentions for its opening brief, but Plaintiffs did not consent.

'major issues' concerning the claims against the customer—not every issue." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1358 (Fed. Cir. 2011) (citing *Katz*, 909 F.2d at 1464). Given SSC's failure to follow through with its numerous other suits and its ongoing proceeding directly against Feit Electric involving the very products in suit here, this matter is more than closely related. *In re Google Inc.*, 588 F. App'x 988, 991 (Fed. Cir. 2014) (Courts use a "flexible approach, including staying proceedings if the other suit is so closely related that substantial savings of litigation resources can be expected"). Even Plaintiffs cannot deny that a resolution of the *Feit Electric Litigation* necessarily will encompass resolution of this matter – Feit Electric would not leave its customer in a suit but resolve claims against the same products elsewhere. It is virtually absolute that if this Court proceeds with this matter, all or most of its efforts will be redundant. *See In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014) (stating the customer-suit exception is "designed to facilitate just, convenient, efficient, and less expensive determination").

Plaintiffs' insistence that the customer-suit exception only applies "when two ***essentially identical suits*** are filed" cannot carry the day.[7] (Dkt. 77 at 6-7 (emphasis in the original)). The focus of the customer-suit exception is to recognize that "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against

---

[7] The case Plaintiffs' cite for their "essentially identical" position says nothing of the sort. *Merial Ltd. v. Cipla Ltd.*, does not even explicitly deal with the patent-law specific concept of the customer-suit exception and, instead, simply states that

> Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action, although there are exceptions and the rule is not rigidly or mechanically applied— "an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts."

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (internal citation omitted).

6

customers of the manufacturer." *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015). This exception seeks to avoid "imposing the burdens of trial on the customer, [] [as] the manufacturer [] is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d at *1365 (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977)); *Card Activation Techs. v. Pier 1 Imports, Inc.*, No. 09C2021, 2009 WL 2956926, at *2 (N.D. Ill. 2009) ("the manufacturer is the true defendant in the customer suit"). "The rationale behind the customer suit exception is that the manufacturer is presumed to have a 'greater interest in defending its actions against charges of infringement,' and therefore 'the manufacturer is the true defendant.'" *Beck Sys., Inc. v. Marimba, Inc.*, No. 01 C 5207, 2001 WL 1502338, at *2 (N.D. Ill. 2001) (citing Kahn, 889 F.2d at 1081). The purpose of the exception is to "facilitate just, convenient, efficient, and less expensive determination." *In re Nintendo of Am., Inc.*, 756 F.3d at *1365; *see, also, Carucel Investments, L.P.*, 2016 WL 8738221, at *3 (citing *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2016 WL 1659924, at *3 (E.D. Tex. 2016) (suggesting that the exception is applicable "where proof of infringement by the manufacturer would [] necessarily establish infringement by the customer.")). There can be no reasonable dispute that resolution of the Feit Electric Litigation will enormously streamline, if not end, this matter and that the determinations from that matter will be immensely insightful to these proceedings. There is no reason for two Federal Courts to address overlapping litigation of nearly 200 products on the same technology from the same Plaintiffs.

Rather than bolstering Plaintiffs' position, Plaintiffs' Initial Infringement Contentions only highlight why this case must be stayed. If 93% of the Feit Electric products are at issue in the two cases and these products make up over 80% of this case, that Plaintiffs limit (for now) three of then patents is of no moment. Indeed, why would there be such a gap? There really are only two

possible answers. Either Plaintiffs have engaged in some version of litigation "gerrymandering," or, alternatively, they tacitly admit that the products accused in the *Feit Electric* case do not infringe the duplicate patents in this suit, and, thus, have removed them.

Ultimately, by supplying Ace Hardware and the Court with its voluminous contentions, Plaintiffs have shown exactly why this case must be stayed — these cases directly overlap with each other. Even now, Plaintiffs' choice of accused products, claim constructions, theories, etc. in the *Feit Electric* case are informing their choices of accused products, claim constructions, theories, etc. in the instant case. Keeping both cases running simultaneously is cumbersome and opens too many opportunities for error[8] and waste. Add on top of that the other dozen similar cases across multiple jurisdictions currently overlapping the Patents-in-Suit with similarly situated customer defendants *and* distributors/manufacturers, and it becomes unmanageable for the parties and the Court.

## II. Even If The Consumer-Suit Exception Does Not Apply, It Is Well Within The Power, Discretion, And Interest Of This Court To Stay This Matter

This Court also possesses inherent authority to stay cases before it, including until the resolution of other suits to avoid duplicate or inconsistent rulings. *See Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). Here, considering the significant overlap between multiple other matters in different jurisdictions, it is in the Court's interest to stay the case. All factors weigh in favor of such a stay.

### a. There Is Substantial Overlap Between This Case and the Sister Cases Involving the Same Patents-in-Suit.

Plaintiffs' Response focused narrowly on a single sister-suit, the *Feit Electric* case, while

---

[8] Plaintiffs have already offered Defendant a settlement offer that referenced the wrong patents and the wrong *number* of patents, which just shows how Plaintiffs' insistence on bringing multiple parallel and overlapping cases in multiple jurisdictions is engendering confusion in their own ranks.

completely ignoring the other dozens of cases involving some iteration of these patents that have been or are currently moving through the Federal Courts. Notably, there are a total of three active cases involving these patents, *Seoul Semiconductor Co., Ltd. et al v. GE Healthcare, Inc.*, 1-22-cv-01455 (D. Del.) (the "*GE* case"), *Seoul Semiconductor Co., Ltd. et al v. Feit Electric Company, Inc.*, 2-22-cv-05097 (C.D. Cal.), *Seoul Semiconductor Co., Ltd. et al v. Finelite, Inc.*, 3-22-cv-02869 (N.D. Cal.) (the "*Finelite* case"). These, too, are reason enough to stay the case. The *Finelite* case, alone, overlaps with seven of the ten Patents-in-Suit. To put into perspective, a chart showing all[9] of the cases where SSC has or is currently asserting all of the Patents-in-Suit is attached as Exhibit B.

This case may not be perfectly identical to any one of the of these many cases, but it is entwined with all of them. Plaintiffs should not be rewarded for manufacturing these circumstances and flooding the courts with concurrent, overlapping suits forcing multiple defendants (both customers and suppliers) and multiple courts to do the same work on the same patents and the same products. That is the essence of judicial waste.

It is true, Ace Hardware does not know exactly which products Plaintiffs' have asserted against these other defendants for this same technology, but considering that many of the defendants are either lighting suppliers or distributors (*e.g.* Feit Electric, Satco Products, Inc., or Finelite, Inc.) or retailers/customers, similarly situated to Ace Hardware (*e.g.* Bed Bath and Beyond, Inc., or Factory Depot Advantages, Inc.), it does not strain the imagination that we are dealing with an overlapping universe of products along with the clearly overlapping universe of patents. Indeed, at issue are certain components – LED chips and LED packages – that are provided

---

[9] This case was transferred from *Seoul Semiconductor Co., Ltd. et al v. Ace Hardware Corporation,* 2-22-cv-00156 (E.D. Va.), for clarity, that matter has been removed from this chart.

by a limited number of entities such that there could be overlap in these other cases that necessary resolves products in this case with those same components through collateral estoppel or any corresponding settlement or license. The problem is that Plaintiffs are the only ones in control of that information. In most jurisdictions, including the Northern District of Illinois, infringement contentions are served on the defendant, not filed with the court. Therefore, for nearly all of these cases, Plaintiffs have so far been able to obfuscate the full extent of the overlap.

### 1.    The Factors Weigh Substantially in Favor of the Stay

As previously stated, courts have a great deal of discretion in granting a stay. Here, the factors normally considered by courts in determining whether a stay is proper all weigh in Ace Hardware's favor. *See Consumer Fin. Prot. Bureau v. Transunion*, 2023 WL 3605995, *1 (N.D. Ill. April 13, 2023). A stay will only serve to streamline the issues at trial and reduce the burden of litigation to *both* parties and the Court, all without unduly prejudicing Plaintiffs. *See id.* (stating that when determining whether to grant a stay, the court should consider "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party."). Plaintiffs' arguments to the contrary do not hold water.

*First*, Plaintiffs' argument that the *Feit Electric* case or any of the other dozens of overlapping cases do not go to the "primary question" of the case makes little sense. The central issue is the party in interest and nature of infringement, those do not stem even remotely from Ace Hardware. The primary question of concern to Plaintiffs, if they are being earnest, is the source of the allegedly infringing components. That question cannot be answered or resolved here. Rather, pursuing Ace Hardware is equivalent to "whack-a-mole." Even if Ace Hardware were to cease sales of all accused products, there is no way for Ace Hardware to determine if the replacements

are potentially infringing; that is an issue for the suppliers. Similarly, in a patent infringement case, the validity of the overlapping patents, functionality, and structure of the overlapping products, the application of claim language to the products, and, yes, ultimately a determination of infringement are certainly the primary, if not the only, questions in the case. Resolution of the *Feit Electric* case will almost necessarily absolve the need for this matter or at least virtually the entirety of it. Similarly, three of the patents in suit are going to be challenged for validity in just the *Feit Electric* case alone. Whether an asserted patent is even valid or enforceable is a "primary question" and the determination on that account would do away with nearly a third of the asserted patents in this case. Moreover, many of the other patents are so closely related in technology that a finding of non-infringement or invalidity in the *Feit Electric* case will be significantly insightful here.

Staying the case and awaiting outcomes of clarification on the validity, enforceability, scope, and claim construction for the patents-in-suit can only result in judicial efficiency. Similarly, staying the case while Plaintiffs take discovery on the 177 overlapping products in the *Feit Electric* case would only reduce the need for duplicative discovery on the exact same products in this case — discovery that, as Ace Hardware is only a customer, Defendant would have to go to Feit Electric to get that information anyway.

*Second*, Plaintiffs make much of the fact that other suppliers beyond Feit Electric are implicated in this case. But that is a red herring. To the extent Plaintiffs in earnest seek to pursue the limited products from other suppliers it claims are at issue, it should drop Feit Electric products from this case. Without such a reduction, there is no basis to proceed where 80% of the matter is redundant and even the portions that arguably are not (they are in light of the overlap in component suppliers) would benefit from a stay given the complex technical and legal issues already before other Courts. At the very least, a stay could go into effect for Feit Electric products since Plaintiffs

have chosen to pursue Feit Electric in a separate action on the same technology.

*Third,* Plaintiffs' position that issues of willfulness cannot be resolved by the other overlapping cases is incorrect and relies on false assumptions. As a practical matter, willfulness requires knowledge of the patents and wanton disregard for the same. *Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, No. 16-CV-2212, 2023 WL 5804194, at *9 (N.D. Ill. Sept. 7, 2023) ("The type of conduct warranting enhanced damages 'has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, or—indeed— characteristic of a pirate.'"). No such conduct can be attributable to Ace Hardware. Even a cursory review of Plaintiffs' infringement contentions reveals that infringement turns on highly technical testing and analysis at the microscopic level deconstruction and examination of components in products offered by Ace Hardware. Requiring a retailer to test every component of its thousands of products would doom the retail industry as a whole. Importantly, Plaintiffs make this same allegation against Feit Electric. Moreover, Plaintiffs' position rests on the unlikely result that every patent is valid, enforceable and infringed. At bottom, again, the conclusions in the *Feit Electric* case will be invaluable here as it relates to willfulness in addition to validity, enforceability and infringement.

*Fourth,* and finally, Plaintiffs will not be unduly prejudiced by a stay. Seven of the ten patents-in-suit are currently being addressed in the *Finelite* case, three of which are also being addressed in the *Feit Electric* case. Over 177 of the accused products are being addressed in the *Feit Electric* case and an unknown overlap of products is also being addressed in the *Finelite* case. A stay will not significantly burden or prejudice Plaintiffs and would only serve to streamline the present case in the event there even is a case to move forward with after all is said and done in the sister cases.

### III.     CONCLUSION

For the foregoing reasons, Ace Hardware requests that the Court enter an order staying the case until the resolution of the *Feit Electric* action.


Dated: October 5, 2023

Respectfully submitted,

By: */s/ Theresa Starck*
   Kal K. Shah
   Theresa L. Starck
   **BENESCH, FRIEDLANDER,**
   **COPLAN & ARONOFF LLP**
   71 South Wacker Drive, Suite 1600
   Chicago, Illinois 60606-4637
   Tel: (312) 212.4949
   kshah@beneschlaw.com
   tstarck@beneschlaw.com

   Eric J. Maiers
   Matthew J. Levinstein
   **GREENBERG TRAURIG, LLP**
   77 West Wacker Drive, Suite 3100
   Chicago, Illinois 60601
   Tel: (312) 456-8400
   maierse@gtlaw.com
   levinsteinm@gtlaw.com


   *Attorneys for Defendant*
   *Ace Hardware Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 5, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

*/s/ Theresa Starck*
Theresa L. Starck

*Attorney for Defendant*